HAROLD W. FUCHS AGENCY, INC., Petitioner-Appellant,
v. DEPARTMENT OF REVENUE, Respondent.

Court of Appeals

*No. 78–178. Submitted on briefs May 12, 1979.—
Decided June 26, 1979.*
(Also reported in 282 N.W.2d 625.)

For the petitioner-appellant the cause was submitted on the brief of *Pfannerstill, Camp & Henderson* of Wauwatosa.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general and *Allan P. Hubbard*, assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.   The taxpayer appeals from the judgment of the circuit court for Dane County affirming the decision and order of the Wisconsin Tax Appeals Commission which in turn affirmed the sales tax assessment by the Wisconsin Department of Revenue against the appellant of $7,527.55 for the period October 1, 1969 through May 31, 1974.  We affirm.

Appellant is engaged in the sale and rental of photocopy machines and copy machine paper and equipment. The department assessed additional sales tax against appellant arising out of (1) moneys collected from users of its coin-operated photocopy vending machines located in certain city of Milwaukee public buildings and (2) moneys collected from customers in Green Bay for freight charges on merchandise shipped to those customers from Milwaukee.

The city of Milwaukee advertised for bids for the installation of sixteen photocopy vending machines in the city hall and municipal libraries.  The invitations to bid provided that bidders were to submit a bid on the amount of return to the city for each 10-cent copy made, which was to include delivery, installation, servicing and removal of the copy machines.  The invitations further provided, "The City is exempt from Federal excise and Wisconsin Sales Taxes.  Bids should be submitted without such taxes.  Tax exemption register number should be used or exemption certificates will be executed in lieu of payment of Federal taxes."

Appellant was successful in bidding $.0555 return to the city for each 10-cent copy made and entered into a contract with the city October 27, 1971.  Appellant placed the photocopy machines in the city buildings as specified

in the invitation to bid. Appellant serviced the machines, insured them against vandalism with proceeds payable to appellant, collected the money from the machines, periodically accounted for the receipts to the city and paid the city 5.55-cents for each 10-cent copy made.

The sales tax assessed by the department on receipts for freight charges arose out of shipments by the appellant to certain customers. Appellant paid the common carrier for the freight charges and added the charges to the customer invoice after establishing the sale price of the merchandise and the sales tax on that price. The freight charges and the sale price of the merchandise were billed on the same invoice but noted separately.

The issues are as follows:

1. Were the receipts from the photocopy vending machines exempt from the sales tax?

2. Were the receipts from customers for the freight charges exempt from the sales tax?

3. If the receipts from the freight charges were not exempt from the sales tax, is the taxation of those receipts an unconstitutional burden on interstate commerce?

1. *Receipts From The Vending Machines Not Exempt*

Section 77.52(1), Stats., provides,

For the privilege of selling, leasing or renting tangible personal property, including accessories, components, attachments, parts, supplies and materials, at retail a tax is hereby imposed upon all retailers at the rate of 3% of the gross receipts from the sale, lease or rental of tangible personal property, including accessories, components, attachments, parts, supplies and materials, sold, leased or rented at retail in this state on or after February 1, 1962; but beginning on September 1, 1969 the rate of tax hereby imposed shall be 4%.

Section 77.54, Stats., provides,

There are exempted from the taxes imposed by this subchapter:

. . . .

(9a) The gross receipts from sales to, and the storage, use or other consumption of tangible personal property, including accessories, parts and supplies, and services by this state or any agency thereof, or any county, municipality as defined in s. 41.02 (4), school district or other political subdivision; . . .

The subsection (9a) exemption is inapplicable. Appellant sold nothing to the city. On the contrary, appellant paid the city a part of appellant's gross receipts received from the users of its machines for the right to place those machines in municipal facilities. City employees used one machine which was located in the city hall but there is no evidence as to whether the city or its employees paid for or had the free use of the machine. The gross receipts from appellant's machines were, for the same reasons, not from the storage, use or other consumption of its machines, paper or services by the city.

Appellant contends that the subsection (9a) exemption is applicable because the premises where the machines were placed were under the control of the city which permitted the machines to be used by city employees and the public.

Control of the vending machine is relevant to the question whether the machine owner or the owner of the premises where the machine is located is the retail seller. *Compare Rowe Cigarette Service Co. v. Graves,* 247 A.D. 852, 286 N.Y.S. 683 (1936), which held that the owner of a cigarette vending machine, and not the owner of the premises where the machine was located, was the retailer where the owner of the machine kept the key to the locked machine, refilled it, removed the money and paid the owner of the premises a part of the proceeds.

The relevancy of control over appellant's photocopying machines to the subsection (9a) exemption is not apparent. Appellant has impliedly conceded it is a retailer subject to the sales tax by making claim to the subsection

(9a) exemption. It appears doubtful to us that the ultimate power of the city to control use of the photocopy machines means that as a matter of law appellant's gross receipts are from sales to the city.

Moreover, there is no evidence that the city exerted its power to control the premises so as to control the use of the machines. The responsibility for installation, servicing and removal was appellant's. Appellant's president testified that some city librarians had keys to the machines but that they did not disturb the money collected from users. The librarians merely reloaded and checked the machines to remove bent or Canadian dimes or other causes of operational problems. Some city employees used the machine in the city hall because of the insufficient number of copy machines in their various offices. As noted previously, the record is silent as to whether city employees had the free use of the machine.

We conclude that the limited control and use of the copy machines by the city and its employees do not bring appellant's gross receipts from the use of those machines within the subsection (9a) exemption.

Lastly, appellant argues that the city and appellant relied upon the statutory exemption, as indicated by the provision in the invitation to bid to the effect that the city is exempt from sales taxes and that bids should be submitted without such taxes. That provision is contained in a printed form clearly used by the city for the solicitation of bids under a variety of circumstances. The circumstances of the contract between the city and this appellant make the provision inapplicable.

Appellant's reliance upon a statement of law by the city in its invitation to bid cannot in any event create a statutory exemption from the sales tax where none exists.

2. *Receipts From Customers For Freight Charges Not Exempt*

Section 77.51 (11), Stats., provides,

(a) "Gross receipts" means the total amount of the sale, lease or rental price, . . . without any deduction on account of the following:

. . . .

3. The cost of transportation of the property prior to its sale to the purchaser;

. . . .

(b) "Gross receipts" shall not include:

. . . .

5. Transportation charges separately stated, if the transportation occurs after the sale of the property is made to the purchaser.

The issue is whether the transportation of goods sold by appellant to a customer occurred before or after the sale was made.

Appellant relies upon the Uniform Commercial Code to establish that the transportation occurred after the sale was made. Section 402.106 (1), Stats., provides that a sale "consists in the passing of title from the seller to the buyer for a price (s. 402.401)." Section 402.401 (2) (a) provides that unless otherwise specifically agreed,

If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(b) If the contract requires delivery at destination, title passes on tender there.

The provisions of the Uniform Commercial Code as to the time title passes do not fix the time of sale for purposes of the sales tax law. Section 77.51, Stats., provides that the definitions given in that section govern the construction of terms in sales and use tax law. Subsection (4r) of sec. 77.51 provides,

A sale or purchase involving transfer of ownership of property shall be deemed to have been completed at the time and place when and where possession is transferred by the seller or his agent to the purchaser or his agent, except that for purposes of this subsection a common carrier or the U. S. postal service shall be deemed the agent of the seller, regardless of any f.o.b. point and regardless of the method by which freight or postage is paid.

Subsection (4r) applies to subsection (11) which defines gross receipts and makes inclusion of transportation cost conditional upon whether the transportation occurs prior to or after the sale. That argument that subsection (4r) is inapplicable to subsection (11) is based upon the relative locations of the subsections within sec. 77.51, Stats. It is unreasonable to conclude that a definition in one subsection is inapplicable to the same term used in other subsections of the same statute which provides that "the definitions given in this section govern the construction of terms in" the sales and use tax law. A dictionary containing definitions which would not apply to words defining other words in the same dictionary would be useless. The same is true of a statute defining statutory terms.

Appellant asserts that subsection (4r) cannot apply to subsection (11)(b)5 of sec. 77.51, Stats., because that would result in a sales tax on transportation costs in every instance where the purchaser pays the seller for those costs. The exemption in subsection (11)(b)5 would therefore be made ineffectual by subsection (4r).

Subsection (4r) makes application of subsection (11)(b)5 limited but not nonexistent. The cost of transportation is not subject to sales tax if possession is transferred but the goods are left with the seller for further processing, such as labelling, painting or engraving, purchaser to pay seller the cost of subsequent transportation.

3. *The Sales Tax On Transportation Charges Is Not An Unconstitutional Burden On Interstate Commerce*

The transportation charges upon which the sales tax was assessed were made for the movement of appellant's goods from Milwaukee to Green Bay, Wisconsin. No facts have been presented from which it is possible to find or infer the existence of a burden on or discrimination against interstate commerce arising out of the tax on that wholly intrastate movement. A nondiscriminatory tax on a purely local sale does not violate art. I, sec. 8 of the United States Constitution. *Eastern Air Transport v. South Carolina Tax Com.,* 285 U. S. 147 (1932).

Appellant argues that the sales tax on the intrastate transportation charge violates the commerce clause because the sales tax law discriminates against the domestic merchant in favor of the foreign merchant.

The claimed discrimination does not exist. The after-tax price to the purchaser is the same, whether he buys locally or from another state. The domestic merchant pays a sales tax based on gross receipts from a sale without deduction for the cost of transportation prior to the sale and may collect the tax from the user or consumer. Secs. 77.52(1) and (3) and 77.51(11)(a)3, Stats. The Wisconsin purchaser from a foreign merchant pays a use tax on the same percentage of the sale price without deduction for the cost of transportation prior to the sale, less the sales or use tax imposed by the state in which the sale occurred. Secs. 77.53(1) and (16) and 77.51(12)(a)3, Stats.

*Henneford v. Silas Mason Co.,* 300 U. S. 577, 583–84 (1937), held that where property was purchased outside the taxing state but subjected to a use tax on the cost price plus transportation after commerce had come to an

end in the taxing state, the use tax was not on inter-state commerce and did not discriminate against inter-state commerce where the use tax was subject to an off-set for another use or sales tax previously paid. The Supreme Court said,

Equality is the theme that runs through all the sections of the statute. . . .

When the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed.

Appellant adds a one-sentence argument that the sales tax violates appellant's right to equal protection of the laws because interstate business is benefited over intra-state business. As we reject the premise that discrimina-tion has occurred, we need not address this issue.

*By the Court.*—Judgment affirmed.