MADISON GENERAL HOSPITAL ASSOCIATION, Plaintiff-Respondent, v. CITY OF MADISON, Defendant-Appellant: GENERAL ELECTRIC COMPANY, Defendant-Respondent: UNITED STATES LEASING CORPORATION, and others, Defendants.

Supreme Court

*No. 77–152. Submitted on briefs October 10, 1979.—Decided November 6, 1979.*
(Also reported in 284 N.W.2d 603.)

For the appellant the cause was submitted on the briefs of *Henry A. Gempeler,* city attorney.

For respondent Madison General Hospital Association the cause was submitted on the brief of *Eugene O. Gehl, Timothy D. Fenner* and *Axley, Brynelson, Herrick & Gehl* of Madison.

For respondent General Electric Company the cause was submitted on the brief of *Frederic J. Brouner, John H. Lederer* and *Dewitt, McAndrews & Porter, S.C.,* of Madison.

HEFFERNAN, J. This case poses a variation on the facts considered in *First National Leasing Corp. v. Madison,* 81 Wis.2d 205, 260 N.W.2d 251 (1977). In *First National Leasing,* we held that sec. 70.11(4m), Stats.,[1] provided an exemption from taxation for all personal property that was physically used exclusively by nonprofit hospitals. Therein we decided that, to qualify for the exemption, the property need not be owned by the hospital and that eligibility for exemption was not destroyed because the owner, lessor of the property, made a profit or used its equity in the leased property for security purposes. We held that the property leased by First National Leasing and used exclusively by Methodist Hospital was tax exempt.

This case against Madison General Hospital was pending at the time *First National Leasing* was decided. It is now conceded by the City that, under the holding of *First National Leasing,* the property leased to Madison General Hospital by United States Leasing Corporation,

---

[1] "(4m) NONPROFIT HOSPITALS. Real property owned and used and personal property used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled, which hospital is owned and operated by a corporation, voluntary association, foundation or trust, no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or group of doctors. This exemption does not apply to property used for commercial purposes or as a doctor's office. The exemption for residential property shall be limited to dormitories of 12 or more units which house student nurses enrolled in a state accredited school of nursing affiliated with the hospital."

General Electric Company, and Technicon Instrument Corporation is not taxable. The City has withdrawn its appeal in respect to the tax on property owned by those corporations.

The City, however, persists in its appeal in respect to the equipment leased by International Business Machines Corporation to Madison General Hospital, because it asserts the pricing policy used in the IBM lease differs in a legally significant manner from the other leases and from the lease considered in *First National Leasing.*

In *First National Leasing,* Methodist Hospital was required by the terms of the lease to reimburse the lessor for any property taxes that might be imposed. The IBM lease of equipment to Madison General does not contain this provision. Rather, IBM has a national pricing policy which dictates that the cost to all lessees throughout the country will be the same irrespective of whether local property taxes are imposed. Accordingly, the City argues that no public purpose is served by exempting the property from taxation, because only IBM will benefit by the freedom from taxation. A finding of nontaxability, it is asserted, will not relieve Madison General from any lease obligation to reimburse the lessor for taxes paid, nor will it have any direct effect upon Madison General's rental costs.

Because of this variation in the lease agreement, the City argues that an exemption of property leased by IBM benefits not the favored nonprofit hospital, but the commercial lessor. It is asserted that the exemption is unconstitutional. We do not agree that the exemption is unconstitutional; and, accordingly, we affirm the judgment of the trial court.

As in the *First National Leasing* case, the facts are undisputed, and only a question of law is posed. Additionally, it is conceded by the City that the property is

used exclusively for hospital purposes as defined in *First National Leasing*. In *First National Leasing*, however, the lease provided that, if the property was taxable, the hospital would be obligated to pay the tax. Sustaining the exemption relieved the nonprofit hospital of the tax burden. In *First National Leasing*, holding the property to be exempt immediately and directly reduced the hospital's costs.

■ It is acknowledged by the City that an exemption afforded a nonprofit hospital serves a proper and appropriate constitutional purpose. Any exemption from taxation, however, which may be afforded to IBM-owned property leased to a hospital under the IBM lease results in a less direct benefit to the hospital than the exemption afforded in *First National Leasing*. In *First National Leasing*, the cost to Methodist Hospital was directly related to whether or not the leased property was taxed. The beneficial effect of the exemption upon Methodist Hospital was direct and immediate. Because, according to the record, IBM charges a uniform national price, whether its leased property is taxed in the City of Madison has no direct or immediate effect on the costs of operating Madison General Hospital. Clearly, under the facts of this case, the benefits accruing to the favored nonprofit hospital are more remote. To so conclude, however, does not result in holding that there is no rational or reasonable relationship between the exemption and the legitimate legislative objective to favor nonprofit hospitals and, ultimately, the consumer of health services.

■ The constitutionality of the exemption must be tested by the usual standards. Article VIII, sec. 1, of the Wisconsin Constitution provides for "reasonable exemptions" from taxation. A tax classification which has a reasonable relation to a legitimate purpose of government is

permissible. *State ex rel. Warren v. Nusbaum,* 59 Wis.2d 391, 438, 208 N.W.2d 780 (1973). As we determined in *First National Leasing,* a tax classification which benefits nonprofit hospitals is permissible. The question in the instant case is whether the benefit is reasonably conferred on the hospital, the legitimate object of the tax exemption, or whether the benefit is so attenuated and minimal as to make the exemption under the circumstances here unreasonable.

The burden of showing a tax statute unconstitutional is the same as the burden which must be assumed when challenging the constitutionality of any legislative enactment. In *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis.2d 32, 46, 205 N.W.2d 784 (1973), we said:

"It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts."

In *First National Leasing,* it was unnecessary to indulge in any presumption to sustain the exemption, for the facts showed a direct benefit to a taxpayer who was appropriately favored by the tax exemption. Nevertheless, we did not predicate our holding on the theory that the exemption, to be sustained, must immediately and directly benefit the favored taxpayer. We said:

"Under the construction of the statute we adopt here, the clear legislative purpose to benefit a nonprofit hos-

pital is advanced. By holding that leased property (whether for profit or not) used exclusively by a hospital is not taxable, the *possibility* of having the tax passed on to the hospital, and ultimately to the consumers of the health services, is avoided." (Emphasis supplied.) (p. 213)

The essence of the holding of *First National Leasing* is contained in the above paragraph. The exemption eliminated any possibility that the tax burden would fall upon the favored nonprofit hospital. That possibility is avoided in this case by holding the property of IBM leased to Madison General tax exempt. It is apparent that the benefit to the hospital here is more remote than under the facts of *First National Leasing*. The benefit, however, need not be direct and immediate. How directly the taxpayer is to be benefited is a matter of legislative policy. All that a court need determine is that the legislature could have reasonably determined that the tax exemption would inure directly or indirectly to the benefit of a taxpayer who could legitimately be favored as a matter of public policy. The legislature has by its express language eliminated the possibility of the Wisconsin property tax being passed on to a nonprofit hospital as a legitimate cost of leasing property which is used exclusively for hospital purposes. Under the holding of *Hammermill, supra,* every presumption must be indulged to sustain the law if at all possible. We believe the trial court correctly and appropriately indulged in the presumption that, under a competitive marketing system, the tax exemption provided by the legislature, which would reduce the cost to the lessor IBM, would presumptively inure to the benefit of a nonprofit hospital. The trial judge stated:

"In the short run, lessors renting at a flat rate may reap a windfall profit. Nevertheless, the legislature in-

tended to benefit non-profit hospitals, and assuming a competitive market for office and hospital equipment, the non-profit hospitals will eventually be the beneficiaries of the tax exemption because taxes will be eliminated as a cost factor in computing the rental rates."

It is not an unreasonable presumption to conclude that the legislative intent of benefiting nonprofit hospitals is furthered by the exemption although the lease costs are not directly and immediately tied to conditions of local taxability. Under the free-market theory of economics, Madison General Hospital will benefit if the City of Madison's property tax is not one of the costs that IBM was obliged to consider in computing its uniform leasing charges. Because the legislature conditioned the exemption only upon exclusive use, it is reasonable to conclude that it did not intend to condition the exemption upon whether or not the lessor would also receive some benefit. It is not unreasonable to assume that the legislature rationally concluded that favoring a lessor of property for a hospital's exclusive use ultimately would result in lower costs to the hospital and lower costs to the consumer of health services.

The exemption eliminates the possibility of having the City of Madison property tax passed on to the consumer as a part of IBM's operating costs. We conclude that, under these circumstances, where the leased IBM property is used exclusively by a nonprofit hospital, the exemption is constitutional, although, under the pricing policy of IBM, some benefits inevitably and immediately inure to the lessor rather than to the nonprofit hospital.

*By the Court.*—Judgment affirmed.