SERVOMATION CORPORATION, successor to Servomation of Wisconsin, Inc., Petitioner-Appellant-Petitioner.

v.

DEPARTMENT OF REVENUE, Respondent.

Supreme Court

*No. 79–1951. Argued March 2, 1982.—Decided March 30, 1982.*

(Also reported in 317 N.W.2d 464.)

For the appellant-petitioner there were briefs by *F. Patrick Matthews, Margaret T. Lund* and *Cook &*

*Franke, S.C.,* of Milwaukee, and oral argument by *Mr. Matthews.*

For the respondent the cause was argued by *Gerald S. Wilcox,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J.    This is a review of a decision of the court of appeals affirming a judgment by the circuit court.  The circuit court had affirmed a decision by the Wisconsin Tax Appeals Commission that Servomation Corporation was liable for sales taxes on the gross receipts of sales made through its vending machines located in schools and hospitals.

Servomation Corporation is principally engaged in placing its coin vending machines in various locations to dispense a variety of commodities for sale.

Servomation entered into agreements with several secondary schools and hospitals to place its vending machines in their facilities.  In return, Servomation agreed to pay to the institutions a fixed percentage of the gross receipts from the products sold through the vending machines.  The prices charged for the products in the machines were set by the owner or administrator of the institution where the machines were located.  The institution was also responsible for any damage to the machines and had control over the ultimate consumer's access to the machine.  Servomation retained ownership and control of the machines.  Its personnel possessed the only keys to the machines and performed the loading and unloading of them.  They also removed the gross receipts from the machines and took them to Servomation's office where they were counted.  After the receipts were counted, Servomation gave the schools and hospitals an accounting of the receipts and paid them the agreed commission.

Servomation received the same net proceeds from sales made from its machines at schools and hospitals as it did from machines located in other locations which were not exempt from taxes. The schools and hospitals generally received a larger share of the receipts based on the understanding that no sales taxes would be due from Servomation on the gross receipts.

On September 18, 1974, the Wisconsin Department of Revenue issued a determination that Servomation was liable for taxes on sales for the period of June 28, 1970 through June 30, 1974, made from its machines located in schools and hospitals.[1] The department also determined that Servomation owed additional use taxes connected with its vending machines in hospitals and schools; however, the issues relating to the use taxes have been resolved and are not before this court.

Servomation appealed the department's determination to the Wisconsin Tax Appeals Commission. The commission affirmed the department's finding that additional taxes were due. Servomation then appealed to the Dane County Circuit Court in accordance with ch. 227, Stats. On November 19, 1979, the circuit court issued a judgment affirming the decision of the commission. This judgment was then appealed to the court of appeals. On July 28, 1981, the court of appeals affirmed the circuit court's decision on the sales tax issue. This court then granted Servomation's petition for review of this single issue.

The issue before us is who is the "seller" of products from the vending machines. If Servomation is found to

---

[1] Servomation also had vending machines at six schools under agreements where the schools' employees or students had the keys, loaded and unloaded the items from the machines, and turned the receipts over to Servomation and received an accounting and commission thereafter. The department did not impose a tax on Servomation for those sales.

be the seller then it is liable for the taxes, while if the hospitals and schools are deemed to be the sellers, then the sales would be exempt from tax. Sec. 77.52(1), Stats. 1969, imposes a sales tax on all "retailers" for "the privilege of selling, leasing, or renting tangible personal property. . . ." Sec. 77.51(4) defines "sales" as "the transfer of the ownership of, title to, possession of, or enjoyment of tangible personal property or services. . . ." Sales by hospitals and schools are exempt from these taxes by virtue of sec. 77.54(4), (9a), and (20)(c)4.[2]

Servomation contends that the sales were made by the schools and hospitals. Despite the fact that it owned the

---

[2] "77.54    General exemptions. . . .

"(4) Gross receipts from the sale of tangible personal property, and the storage, use or other consumption in this state of tangible personal property which is the subject of any such sale, by any elementary school or secondary school, exempted as such from payment of income tax under ch. 71, whether public or private. . . .

"(9a) The gross receipts from sales to, and the storage, use or other consumption of tangible personal property, including accessories, parts and supplies, and services by this state or any agency thereof, or any county, municipality as defined in s. 41.02 (4), school district or other political subdivision; any corporation, community chest fund, foundation or association organized and operated exclusively for religious, charitable, scientific or educational purposes, or for the prevention of cruelty to children or animals, no part of the net income of which inures to the benefit of any private stockholder, shareholder, member or corporation. . . .

"(20)(c)4. Taxable sales shall not include meals, food, food products or beverages sold by hospitals, sanitoriums, nursing homes, day care centers registered under ch. 48, nor to such items when furnished by a public or private institution of higher education in accordance with any contract or agreement made or executed on or before October 1, 1969. The cost of this act shall be funded from appropriations made to the board on government operations for the state universities, and university of Wisconsin, by chapter 154, laws of 1969."

vending machines, Servomation argues that the schools and hospitals were the sellers because they arranged for the sale of the products by procuring the purchasers. It relies on a case from the Dane County Circuit Court, *Hargarten d/b/a Chattel Changers v. Department of Revenue*, Wis. Cir. Ct., Dane County (Case No. 156–180, Oct. 10, 1977), CCH State Tax Reporter, Vol. 2, Par. 201–430.[3] That case involved a party engaged in the business of selling property for others. The petitioner in *Hargarten* was held to be a seller because, even though it never owned the property, it acted as the owner's agent in negotiating and arranging for sales and procuring purchasers.

The reasoning of *Hargarten* does not lend support to Servomation's position in this case. The taxpayer in *Hargarten* was in the business of arranging sales on behalf of the parties. This is not at all comparable to the position of the schools and hospitals in the present case. They allowed Servomation to place its machines in their buildings in exchange for a fee equal to a percentage of Servomation's receipts. This was, in essence, nothing more than a lease arrangement between Servomation and the institutions. The schools and hospitals in this case chose where the machines were to be installed and could control the cost and types of products sold, but they cannot be said to have negotiated or arranged the sales as the taxpayer in *Hargarten* did.

We agree with the court of appeals that Servomation was clearly the seller of these products. It retained ownership and control of the machines and possessed the only keys to them. The money from the machines was

---

[3] Ordinarily circuit court judgments or decisions are not citable as authority, however the court can consider them for their reasoning as a research aid, particularly where, as here, the case is reported in CCH State Tax Reporter-Wisconsin.

unloaded by Servomation employees and was never seen by the schools and hospitals. They were sent records of the receipts by Servomation and received a commission on the sales. Additionally, it was revealed at oral argument that Servomation bears the costs of spoiled or defective products. Selling products through vending machines is Servomation's business. The schools and hospitals are not involved in these sales. They did not own nor lease the machines, nor any of the merchandise offered for sale in the machines. Nor did they control or handle the proceeds. They only received a commission calculated by Servomation because they permitted the machines to be placed in their institutions.

Our decision is in accord with the court of appeal's decision in *Harold W. Fuchs Agency, Inc. v. Dept. of Revenue*, 91 Wis. 2d 283, 282 N.W.2d 625 (Ct. App. 1979). The court of appeals held in that case that gross receipts from coin operated photocopy machines in a city hall and city libraries were not exempt from sales tax. As in the present case, the taxpayer in *Fuchs* serviced the machines, collected the money from them, accounted for the receipts, and paid the city a fixed amount based on the number of copies sold. Servomation attempts to distinguish *Fuchs* on the ground that the institutions in the present case controlled the access to the areas where the machines were located, while in *Fuchs* the city did not exert its power to control access to the machines. However, the control over the vending machines remains with Servomation in this case. Simply because the schools and hospitals may have the power to bar the public from using the machines is not enough to make them the sellers in this case. As the court said in *Fuchs*, "It appears doubtful to us that the ultimate power of the city to control use of the photocopy machines means that as a matter of law appellant's gross receipts are from sales to the city." 91 Wis. 2d at 288. In the present case,

as in *Fuchs,* the owner of the machines is the seller for sales tax purposes.

This conclusion is also in accord with cases from other jurisdictions. In *Rowe Cigarette Service Co. v. Graves,* 247 App Div. 852, 286 N.Y.S. 683 (1936), the court held that the owner of cigarette vending machines was the retailer and was liable for taxes on the sales. In *Graves,* the machine owner filled the machines, retained the keys to the machines, removed the money from them, and paid the owners of the premises a fee for allowing the machines to be installed. *See also: State v. Woods,* 242 Ala. 184, 5 So. 2d 732 (1942).

Servomation argues that the existence of sec. 77.51 (17), Stats. 1969, supports its position. This statute provides that receipts from vending machines located on military installations are subject to the sales tax. The tax is imposed on the person who has ownership, possession, control and access to the machines.[4] Servomation argues this statute would be rendered superfluous by a decision that imposes sales tax liability on the owners of vending machines. As the court of appeals recognized, this statute covers a special type of situation. A state's

---

[4] "77.51 (17) The sales tax applies to the receipts of operators of vending machines located on army, navy or air force installations in this state and dispensing tangible personal property. This subsection shall not be deemed to require payment of sales tax measured by receipts of such operators who lease the machines to exchanges of the army, air force, navy or marine corps which acquire title to and sell the merchandise through the machines to authorized purchasers from such exchanges. The term 'operator' as used in this subsection, means any person who owns or possesses vending machines and who controls the operations of the machines as by placing the merchandise therein or removing the coins therefrom, and who has access therefor for any purpose connected with the sale of merchandise through the machines, and whose compensation is based, in whole or in part, upon receipts from sales made through such machines."

ability to tax may be influenced by the supremacy clause and other constitutional factors when the federal government is involved. The legislature may well have been concerned about such factors when it enacted sec. 77.51 (17), Stats. 1969. By specifically providing for a sales tax on receipts from vending machines located on military bases, the legislature cannot be said to have precluded taxation of sales made through vending machines located in schools and hospitals.

Finally, Servomation argues that a tax on these sales would defeat the legislative intent to promote religious, charitable, scientific or educational purposes. It relies on two decisions by this court, *First National Leasing Corp. v. Madison,* 81 Wis. 2d 205, 260 N.W.2d 251 (1977), and *Madison General Hospital Asso. v. Madison,* 92 Wis. 2d 125, 284 N.W.2d 603 (1979). These cases established the rule that property owned by private parties and leased to hospitals for the hospital's exclusive use is exempt from property taxation. This is the rule even though some benefits were derived by the private party from the leasing agreement and even though the tax exemption did not immediately benefit the hospitals. However, the holdings of these cases cannot be extended to cover the present case. The equipment was leased to the hospitals in these cases for use by them for medical and other hospital purposes. X-ray and other hospital equipment was involved in *First National Leasing v. Madison.* A tax on such property would be akin to taxing the functions of the hospital. But in the present case the schools and hospitals are not leasing the vending machines for educational or hospital functions. They are simply furnishing space to Servomation for its vending machines. While hospital personnel and school children may derive some benefit from having access to the ma-

chines, the machines are not tied to the functions and purposes of the hospitals and schools. As the court of appeals observed:

"A legislative intent to preclude the possibility that property tax would be passed on to hospitals, thereby resulting in higher fees for services to consumers, cannot be translated into an intent to relieve retail sellers from the sales tax merely because the sales in question occur on hospital or an educational institution's property. That the commissions received by such institutions may be lower by reason of the imposition of the sales tax is irrelevant to the question whether a retail sale occurred, and to the question of who was the retail seller."

*By the Court.*—The decision of the court of appeals is affirmed.