**APOLLO STEREO MUSIC COMPANY, INC. and Skyline Vending Co., Plaintiffs–Appellees,**

v.

**The CITY OF AURORA, Colorado, and John Gross, Defendants–Appellants.**

**No. 93SA206.**

Supreme Court of Colorado,
En Banc.

April 4, 1994.

Justice LOHR delivered the Opinion of the Court.

In a declaratory judgment action, the Adams County District Court ruled that the Aurora Retail Sales and Use Tax Ordinance imposed an income tax upon Apollo Stereo Music Company, Inc. and Skyline Vending Co. in violation of Article X, section 17, of the Colorado Constitution. We hold that as applied to these parties, the tax operates as a constitutionally permissible sales tax and not as an income tax. Accordingly, we reverse the judgment of the district court.[1]

## I.

Apollo Stereo Music Company, Inc. (Apollo) and Skyline Vending Co. (Skyline) are separately engaged in the business of placing various coin-operated machines at sites owned and operated by "location owners."[2] The machines are amusement devices, such as pool tables and video screen games, and do not dispense items of personal property. Apollo and Skyline service the machines, which require quarters and, in some cases, dollar bills to operate. Apollo and Skyline divide the gross proceeds from the machines equally with the location owners.

In May 1990, the City of Aurora (Aurora) assessed sales taxes against Apollo and Skyline under the Aurora Retail Sales and Use Tax Ordinance (the ordinance). Aurora, Colo., Code ch. 36, art. II, §§ 36–16 to 36–108 (1979 & Supps.).[3] The taxes were calculated upon each business's share of the gross receipts from the machines. Apollo and Sky-

Bruce G. McLellan, Lakewood, for plaintiffs-appellees.

Office of the City Atty., Charles H. Richardson, Peter Ruben Morales, Stacie Glass Evans, Aurora, for defendants-appellants.

Geoffrey T. Wilson, Gen. Counsel, Denver, for amicus curiae Colorado Mun. League.

1. A notice of appeal from the judgment of the Adams County District Court was originally filed with the Colorado Court of Appeals. Because, under § 13–4–102(1)(b), 6A C.R.S. (1992 Supp.), the court of appeals lacks jurisdiction to consider an appeal from the district court in which an ordinance has been declared unconstitutional, the court of appeals referred the case to this court requesting a determination of jurisdiction pursuant to § 13–4–110(1)(a), 6A C.R.S. (1986). We accepted jurisdiction.

2. The record on appeal contains no original pleadings, and the district court's declaratory judgment order does not set forth the underlying facts. We must therefore rely upon the parties' briefs in the district court and in this court for the facts of this case.

3. We cite herein to sections of the ordinance in effect at the time Apollo and Skyline were assessed. The ordinance has subsequently been amended.

line each appealed its assessment to Aurora's Director of Finance (Director), who reduced the amounts of the assessments.[4] The Director assessed $12,408.03 against Apollo and $964.11 against Skyline. These amounts were calculated principally upon the total gross sales from the machines.[5]

Apollo and Skyline sought relief from their assessments by an action brought in Adams County District Court pursuant to C.R.C.P. 57 and 106. The C.R.C.P. 106 claim[6] was dismissed, and the matter was determined under C.R.C.P. 57 as a declaratory judgment action. After a non-evidentiary hearing at which the parties stipulated that the facts were not in dispute, the district court ruled that section 36–76(11) of the ordinance, under which Apollo and Skyline were taxed, operated as an income tax on gross receipts "as imposed on" Apollo and Skyline in violation of Article X, section 17, of the Colorado Constitution.

## II.

### A.

 The City of Aurora is a home rule municipality formed pursuant to Article XX, section 6, of the Colorado Constitution. As such, Aurora is constitutionally empowered to adopt a sales tax. *Berman v. City and County of Denver*, 156 Colo. 538, 542–44, 400 P.2d 434, 436–37 (1965). However, home rule cities have no power to levy income taxes. *City and County of Denver v. Sweet*, 138 Colo. 41, 51–53, 329 P.2d 441, 446–47 (1958). Under Article X, section 17, of the Colorado Constitution, the power to levy income taxes belongs exclusively to the state. *Id.*

The ordinance provides that a retailer is liable for and must pay to the municipality three and one-half (3.5) per cent of all sales made by the retailer each month. Code § 36–79(a) (June 1987 Supp.). The ordinance also provides a bracketed schedule for collection of the tax from the purchaser at the time of sale. The schedule specifies that a tax of one cent is imposed on sales between fifteen and forty-two cents. Code § 36–80 (June 1987 Supp.). The section of the ordinance under which Apollo and Skyline were taxed reads as follows:

There is hereby levied and there shall be collected and paid a tax in the amount stated in section 36–80, as follows:

. . . .

(11) Upon recreation services offered in the City. For purposes of this section recreation services shall mean all services relating to athletic or entertainment participation events including but not limited to pool, billiards, skating, tennis, bowling, health/athletic club memberships, video games and video club memberships.

Code § 36–76(11) (May, Oct. 1988 Supps.).

Apollo and Skyline contend that the tax is imposed on them based upon the gross receipts from their machines, and therefore the tax operates as an income tax. They assert that two of our previous cases, *Board of Trustees, Minturn v. Foster Lumber Co.*, 190 Colo. 479, 548 P.2d 1276 (1976), and *Mountain States Tel. and Tel. Co. v. City of Colorado Springs*, 194 Colo. 404, 572 P.2d 834 (1977), support this contention. We disagree.

In *Minturn*, the town of Minturn had imposed what was denominated an "occupation

---

**4.** John Gross, a defendant-appellant in this case, was the Director. We have no record of the proceeding before the Director and thus again we rely upon the parties' briefs to describe the nature of that proceeding.

**5.** $2,750.12 of the assessment against Apollo was a use tax not based on gross receipts from coin-operated vending machines and is not contested. The assessment amounts include interest.

**6.** C.R.C.P. 106(a)(4) provides a means to obtain relief when "any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law."

tax"[7] on all construction and building materials businesses and occupations in the town. *Minturn*, 190 Colo. at 480, 548 P.2d at 1276. The tax was levied at a specified rate applied to "the total gross revenues derived from sales occurring within the corporate limits of the town." *Id.* We held that the tax was an income tax and not an occupation tax because it bore a direct relation to the income or receipts of the businesses being taxed, whereas "an occupation tax bears no such relationship." *Id.* at 482, 548 P.2d at 1278. We stated that an occupation tax "is a tax upon the very privilege of doing business, and does not fluctuate from month to month depending upon the financial success or sales of the enterprise." *Id.*

In *Mountain States*, the City of Colorado Springs enacted a tax, denominated an "occupation tax," upon public utilities operating within the city. *Mountain States*, 194 Colo. at 405, 572 P.2d at 835. Just as in *Minturn*, we invalidated the tax as a constitutionally impermissible income tax because the tax was based upon the gross revenues of the utilities from operations within the city. *Id.* at 406, 572 P.2d at 835–36.

*Minturn* and *Mountain States* are both distinguishable from the present case in that in each of those cases, the burden of paying the tax was imposed directly upon the businesses rather than upon the customers of the businesses. In *Minturn*, the construction and building materials businesses were required to pay the tax. *Minturn*, 190 Colo. at 480, 548 P.2d at 1276. In *Mountain States*, the utilities were required to pay the tax. *Mountain States*, 194 Colo. at 406, 572 P.2d at 835. Although the principal holding in each of those cases was that the tax could not be upheld as an occupation tax, we also explicitly determined that the tax was not a sales tax. *Minturn*, 190 Colo. at 482 n. 5, 548 P.2d at 1278 n. 5; *Mountain States*, 194

Colo. at 406, 572 P.2d at 835–36. In *Mountain States*, we concluded that the drafters of the ordinance never intended the ordinance to impose a sales tax because the incidence of the tax was on the utilities rather than on consumers. *Mountain States*, 194 Colo. at 406, 572 P.2d at 835–36. Neither case contains any suggestion that a municipal tax code imposing obligations on a business to collect a tax from purchasers and remit to the taxing authority based on a percentage of sales by the business would cause such a structure of taxation to be characterized as an income tax rather than a sales tax.

The incidence of the tax in the present case, in contrast to the taxes at issue in *Minturn* and *Mountain States*, was intended to fall on purchasers rather than upon businesses delivering products or services to those purchasers. The ordinance states:

> It is hereby declared to be the legislative intent of the city that for the purposes of this article, every person [8] who is engaged in business in the city, and who shall deliver or cause to be delivered to the purchaser in the city, any property or services taxable hereunder is exercising a taxable privilege and shall collect the tax imposed by this article ... on the total purchase price of such tangible personal property or taxable services that are purchased, sold, leased or rented at any time by or to every customer or buyer.

Code § 36–16(a) (Dec. 1989 Supp.).

On one hand, this language suggests that because a business delivering property or services is "exercising a taxable privilege," the burden of paying the tax falls upon the business. On the other hand, the language instructs such a business to "collect the tax," suggesting that the incidence of the tax falls on the customers of the business. Despite this incongruity, when read as a whole the

---

7. Municipalities were statutorily authorized to impose occupation taxes. § 31–15–501(1)(c), 12B C.R.S. (1986). As noted in *Minturn*, we had previously upheld such taxes when imposed at a "flat rate," *i.e.*, a fixed amount unrelated to revenues from sales. *Minturn* 190 Colo. at 481, 548 P.2d at 1277–78, and cases there cited.

8. The ordinance defines "person" to include "any individual, firm, co-partnership, joint venture, corporation...." Code § 36–18 (Dec. 1989 Supp.).

ordinance discloses that the drafters intended the incidence of the tax to fall on the customers of the businesses rather than on the businesses themselves. For example, the ordinance provides:

> It shall be unlawful for any retailer to advertise or hold out or state to the public or to any customer, directly or indirectly, that the tax or any part thereof imposed by this division shall be assumed or absorbed by the retailer, or that it will not be added to the purchase price of the property sold, or if added, that it or any part thereof shall be refunded.

Code § 36–82(a) (June 1987 Supp.).

Furthermore, throughout the ordinance, reference is made to the "collection" of taxes by the retailer. Code §§ 36–16(a) (Dec. 1989 Supp.), 36–18 (May 1988, Dec. 1989 Supps.), 36–76 (May, Oct. 1988 Supps.), 36–79 (June 1987 Supp.), 36–83 (June 1987 Supp.). The structure of the ordinance's bracketed schedule itself indicates that the purchaser is to pay the tax at the time of the sale. Code § 36–80(1) (June 1987 Supp.). Regarding the bracketed amounts, the ordinance states:

> Retailers shall add the tax imposed hereby, or the average equivalent thereof, to the purchase price or charge, showing such tax as a separate and distinct item ... and when added, such tax shall constitute a part of such price or charge and shall be a debt from the consumer or user to the retailer until paid and shall be recoverable at law in the same manner as other debts; provided, however, that the retailer shall be entitled, as collecting agent of the city, to apply and credit the amount of this collection against the three and one-half (3.5) per cent rate to be paid by him....

Code § 36–80(3) (June 1987 Supp.).

Taken as a whole, the ordinance clearly demonstrates that its drafters intended the incidence of the tax to fall on the customers of a retail business. The tax is levied on the transaction itself. Code § 36–76(11) (May, Oct. 1988 Supps.). The duty to pay the tax is imposed on the customers while the duty to collect the tax as agent of the city is imposed on the businesses. *Cf. Dep't of Revenue v. Modern Trailer Sales, Inc.*, 175 Colo. 296, 302, 486 P.2d 1064, 1067 (1971) (interpreting Colorado state sales tax statutes to reach same conclusion); *J.A. Tobin Constr. Co. v. Weed*, 158 Colo. 430, 435–36, 407 P.2d 350, 353 (1965) (same). If a retailer fails to collect the tax as required, it is nevertheless responsible for remitting the tax as a percentage of sales. Code § 36–79(a) (June 1987 Supp.); *see* Code § 36–80(3) (June 1987 Supp.). Therefore, because the incidence of the tax falls on the customers, the tax is a sales tax rather than an income tax.

### B.

■ Despite the fact that the ordinance is intended to place the burden of paying the tax on purchasers, Apollo and Skyline argue that in practice, the burden unavoidably falls on them because the nature of their coin-operated machines prevents them from collecting the tax. They contend that because they in fact bear that burden and the burden is directly related to their gross income, the tax, as applied to them, operates as an income tax. *See Rancho Colorado, Inc. v. City of Broomfield*, 196 Colo. 444, 449, 586 P.2d 659, 663 (1978) (the nature of a tax must be determined by its operation rather than its designation). We again disagree.

The language of the ordinance suggests that it was designed to establish a clear distinction between the price of goods or services charged by the retailer and the tax to be paid by the purchaser. This feature of the ordinance is demonstrated by the provisions that require the retailer to show the tax as a "separate and distinct item," Code § 36–80(3) (June 1987 Supp.), and that prohibit a retailer from holding out that it shall assume or absorb the tax, Code § 36–82 (June 1987 Supp.). The retailer may conduct its business by setting its base prices on the basis of marketing considerations and will enjoy whatever profit results from sales. Aurora then requires the purchaser to pay a tax for each individual sale and purchase transac-

tion. The retailer is to act as a collection agent for the city. To some extent, perhaps, the base prices set by the retailer are influenced by the sales tax. Nevertheless, the tax is intended to be a purchaser expense, separate and distinct from the base retail price. The retailer is free to set that base price at whatever level it believes the market will bear.

The mechanisms in the amusement devices accept quarters or dollar bills but do not accept or return pennies. Apollo and Skyline desire to set their base prices at twenty-five cents. They argue that because the nature of the coin mechanisms in their machines prevents them from collecting the extra cent in tax, they are forced to pay an income tax by paying the purchaser's tax out of their own twenty-five cent proceeds. This argument is misguided.

Apollo and Skyline have elected to conduct their businesses in such a way that the presence of a clerk or salesperson is not required to effect their sales. Because they need not pay wages to such clerks and salespersons, they realize a significant savings. The ability to place the unattended machines in numerous locations also represents a major advantage to the businesses.

A retailer who personally sells an item for twenty-five cents over the counter is physically able to collect an extra cent from the purchaser. Under the ordinance, such a retailer is required to collect that extra cent as payment of the city sales tax. Code § 36–80(3) (June 1987 Supp.). In contrast, because of the advantageous marketing method

that Apollo and Skyline have chosen, they are incapable of collecting that extra cent. Nevertheless, the businesses already enjoy substantial benefits from their method of retailing. They should not in addition enjoy a freedom from obligation to collect and remit taxes that is not available to other retailers, merely because of the mechanical limitations of their own chosen marketing method. The inherent limitations of the machines, not Aurora's sales tax, constrain the base prices that Apollo and Skyline may set for their services. Even in the absence of the sales tax, those same mechanical limitations prevent Apollo and Skyline from setting their base prices at any amount that cannot be paid by quarters or dollar bills.

The fact that the businesses cannot set their base prices at twenty-five cents and at the same time collect the one cent sales tax is a result of marketing strategy. That fact, therefore, does not transform the Aurora sales tax into an income tax. If Apollo and Skyline continue to collect twenty-five cents for each transaction on their machines, they may designate the base price as twenty-four cents with one cent added sales tax. *See* Code § 36–80(3) (June 1987 Supp.) (tax must be shown as separate and distinct item). In any case, the businesses are responsible for remitting the tax prescribed by the ordinance.[9]

### C.

■ Apollo and Skyline also argue that as applied to them, the tax does not operate as a sales tax but instead functions as an income

---

9. Cases from other jurisdictions, applying their own statutory taxing schemes and addressing various legal challenges to taxes on sales from vending machines, provide support for our conclusion that the businesses must remit the tax despite the fact that their chosen retailing method constrains their ability to collect from purchasers. *See, e.g., Stevens Enters. v. State Comm'n of Revenue and Taxation,* 179 Kan. 696, 298 P.2d 326, 330–331 (1956) ([The fact that] "[s]imply because of the amount of its single sales, appellant has no effective means of collection … does not alter its obligation to pay the state two per cent of its gross receipts."); *Robert H. Hinckley, Inc. v. State Tax Comm'n,* 17 Utah 2d 70, 404 P.2d 662, 666 (1965) (holding that the fact that an organization chose a method of doing business through vending machines making it impossible for it to collect a sales tax under a bracket system but yet was required to remit taxes based on such sales did not deprive the business of equal protection of laws or deprive it of its property without due process); *White v. State,* 49 Wash.2d 716, 306 P.2d 230, 235 ("[T]he statute imposes upon the seller the duty of transmitting the tax, whether or not he collects it, and whether or not his failure to collect it is attributable to his own fault."), *appeal dismissed,* 355 U.S. 10, 78 S.Ct. 23, 2 L.Ed.2d 21 (1957).

tax because they do not qualify as "retailers" or "vendors" under the ordinance. They contend that they are not retailers or vendors because the users of the machines are the customers of the location owners and not of Apollo and Skyline. This argument fails.

The ordinance states that the legislative intent of the city is that the sales tax is to be collected by "every person who is engaged in business in the city, and who shall deliver or cause to be delivered to the purchaser in the city, any property or services taxable" under the ordinance. Code § 36–16(a) (Dec. 1989 Supp.). Persons so engaged in business are retailers or vendors, for the ordinance defines "retailer" or "vendor" in part as "any person selling ... taxable services to a consumer [or] purchaser." Code § 36–18 (May 1988 Supp.).

Apollo and Skyline own the amusement devices.[10] The location owners provide the space, the electricity, and the insurance for the machines. Apollo and Skyline place the machines at the various sites and have the right to select and switch the machines that are placed. They maintain and repair the machines. They alone have access to the money in the machines. Periodically, at the various sites, Apollo and Skyline retrieve the money from the machines and then pay one half of the money to the location owners.[11]

We do not accept the argument that the users of the machines are not the customers

of Apollo and Skyline. When a person enters a convenience store to purchase an item from the store, that person is the customer of the store. However, if the person chooses to purchase a service from one of the coin-operated amusement devices placed in the store by Apollo or Skyline, that person is acting as a customer of Apollo or Skyline. The control exercised by Apollo and Skyline over the machines, and especially over the access to and distribution of the moneys deposited in the machines as outlined above, belies the contention that the purchasers are customers only of the location owners.[12] Therefore, Apollo and Skyline qualify as retailers or vendors under the ordinance and are subject to the sales tax collection and payment obligations imposed by the ordinance.

### III.

For the reasons set forth in this opinion, we hold that section 36–76(11) and associated provisions of the Aurora Retail Sales and Use Tax Ordinance, as applied to Apollo and Skyline, operate as a constitutionally permissible sales tax and not as an income tax. The judgment of the district court is reversed.

**10.** The record on appeal contains no copies of any agreements between Apollo and Skyline and the location owners. We rely on representations made by Apollo and Skyline in their briefs and oral argument concerning the relationship between them and the location owners. Aurora in its briefs expressly acknowledges the correctness of many of the facts so represented, and the record contains no suggestion that any are disputed.

**11.** Sometimes the location owner's half is retained as payment on loans or is forwarded to the location owner's headquarters.

**12.** Other jurisdictions have reached similar conclusions when considering various legal challenges under their statutory taxing schemes. *See, e.g., State v. Woods,* 242 Ala. 184, 5 So.2d 732, 736 (1942) (observing that space rented in business establishment to vending machine own-

er becomes a separate place of business of that owner who thereby becomes liable for tax under general sales tax and vending machine statute); *Rowe Cigarette Serv. Co. v. Graves,* 247 App.Div. 852, 286 N.Y.S. 683, 684–85 (1936) (holding that where the owner of vending machines placed on business premises held the key to the machines and filled and removed all money from the machines, the owner of the machines and not the owner of the premises made the sales and was thus responsible for payment of the tax); *Servomation Corp. v. Dep't of Revenue,* 106 Wis.2d 616, 317 N.W.2d 464, 466 (1982) (holding that the owner of commodity vending machines that placed the machines in schools and hospitals was the seller of the products, in part because the owner retained control of the machines, possessed the only keys to them, and collected the money from them).