VAN PELT *v.* PAULL.

1. PRINCIPAL AND AGENT—QUESTION OF FACT—DIRECT EVIDENCE—
CIRCUMSTANTIAL EVIDENCE—CONTRACT—INTENT.

Creation of an agency relationship is ordinarily a question of fact
which may be established the same as any other fact, either
by direct or by circumstantial evidence, and whether an agency
has in fact been created is to be determined by the relations
of the parties as they exist under their agreements or acts, with
the question being ultimately one of intention.

2. SAME—REPRESENTATION OF ANOTHER—EVIDENCE OF AGENCY—UN-
DERSTANDING OF PARTIES.

The existence of an agency is determined by the fact that one
represents and is acting for another and not by the consider-
ation that it will be inconvenient or unjust if he is not held
to be the agent of such other, and if relations exist which
will constitute an agency, it will be an agency whether the
parties understood the exact nature of the relation or not.

3. SAME — DESIGNATION OF RELATIONSHIP — NATURE OF AGENCY —
AGENCY IN FACT.

The manner in which parties designate their relationship is not
controlling in determining whether an agency exists, and if an
act done by one person on behalf of another is in its essential
nature one of agency, one is the agent of such other notwith-
standing he is not so called.

4. SAME—RIGHT TO CONTROL AGENT—TEST OF AGENCY—INDEPENDENT
CONTRACTOR.

Generally speaking, the test of principal and agent is the right
to control, and it is not the fact of actual interference with

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur 2d, Agency §§ 348, 351.
[2–4] 3 Am Jur 2d, Agency §§ 2, 17–19, 21.
[5] 5 Am Jur 2d, Appeal and Error § 839.
[6] 3 Am Jur 2d, Agency §§ 21, 348, 351, 359; 5 Am Jur 2d, Appeal
and Error § 839.

the control but the right to interfere that makes the difference between independent contractor and a servant or agent.

5. APPEAL AND ERROR—NONJURY TRIAL—FINDINGS OF FACT—PRE-PONDERANCE OF EVIDENCE.

The Court of Appeals does not reverse findings of fact made by the trial judge in a nonjury trial unless the evidence clearly preponderates in the opposite direction.

6. PRINCIPAL AND AGENT — NONJURY TRIAL — FINDINGS OF FACT — RIGHT TO CONTROL AGENT — PREPONDERANCE OF EVIDENCE.

Appellants' claim that the trial court erred in holding that an agency relationship existed between appellants and individual proprietor doing business as Arthur Murray Studios of Traverse City *held*, without merit, where the record establishes that all appellants had some right to control the operation of said dance instruction business, since the existence of such agency was a question of fact, and the Court of Appeals does not reverse findings of fact made by a trial judge in a nonjury case unless the evidence clearly preponderates in the opposite direction.

Appeal from Grand Traverse; Brown (Charles L.), J. Submitted Division 3 November 10, 1966, at Grand Rapids. (Docket No. 1,746.) Decided May 9, 1967. Rehearing denied June 28, 1967.

Complaint by Mary Birrel Van Pelt against Frederick E. Paull, Doris Eaton Travis, Arthur Murray Studios of Michigan, Inc., a Michigan corporation, and Doris Eaton Travis, Inc., a Michigan corporation, to recover the value of dancing lessons paid for but never received by plaintiff. From judgment for plaintiff against Doris Eaton Travis, Arthur Murray Studios of Michigan, Inc., and Doris Eaton Travis, Inc., they appeal. Affirmed.

*Running & Wise* (*William L. Wise*, of counsel), for plaintiff.

*Darden, Neef & Heitsch* (*Allan Neef*, of counsel), for defendants.

BURNS, J. Plaintiff signed 2 contracts with "Arthur Murray School of Dancing" at the Traverse City Arthur Murray studio which was being operated by the defendant Paull. She paid $3,687.50 for 315 hours of dance instruction. Subsequently, Paull had financial difficulties and ultimately was adjudged bankrupt. Plaintiff did not receive any lessons after August 1, 1962, although there remained 208 hours of lessons under the contracts.

Plaintiff commenced this action for the recovery of the value of the dance lessons. Defendants Arthur Murray Studios of Michigan, Inc., a Michigan corporation, Doris Eaton Travis, Inc., a Michigan corporation, and Doris Eaton Travis, individually, were joined because of an alleged agency relationship with the defendant Paull. Paull, however, was never served with process due to his bankruptcy proceedings.

At the conclusion of the trial, the circuit judge stated:

"This is a question of agency and a question of fact whether or not there was any holding out to the public which would justify Mrs. Van Pelt's recovery against Arthur Murray Studios of Michigan, Inc., or Doris Eaton Travis individually or as a corporation."

The trial judge in a written opinion held that under the facts of this case an agency was established and granted a judgment to the plaintiff against all of the defendants except Paull.

In opposition to plaintiff's theory that Paull was an agent of the other defendants, the appellants claim that Paull was an independent sublicensee of Arthur Murray Studios of Michigan, Inc., and that, therefore, any contracts entered into by Paull, who

was doing business as Arthur Murray Studios of Traverse City, were his sole responsibilities.

The appellants have appealed the judgment of the trial court on 7 specific grounds of error, each ground pertaining to one factual situation of the entire relationship between the parties. For our determination the issue in this case is: Were there sufficient facts in evidence for the trial judge to find that an agency relationship existed between the defendants?

To start, let us examine the contract in effect between the defendants, Arthur Murray Studios of Michigan, Inc., and the defendant Paull. Some provisions of the contract, which was designated as "sub-franchise agreement," are summarized below:

§ 1.02 provided that Paull pay to the corporation 11-1/2 percent of his gross receipts and maintain books and records to be available to the corporation.

§ 1.03 provided that Paull conduct the school on premises owned or leased by the corporation or controlled by the corporation.

§ 1.05(a) allowed the corporation to set the minimum price Paull could charge for lessons; (b) obligated Paull to honor any unused lessons of *any* pupil who purchased lessons from the corporation or any other person operating under the national Arthur Murray franchise; (c) obligated Paull to operate the school in accordance with standards and procedures set by the corporation; (d) obligated Paull to pay part of any state-wide advertising or promotional activities.

§ 1.07 prohibited Paull from borrowing money without the consent of the corporation.

§ 1.08 provided that Paull submit to the corporation, in advance of employment, the names of all persons to be employed by Paull.

§ 1.16 obligated Paull to furnish the corporation a monthly accounting statement and to pay the corporation $50 per month for bookkeeping services.

§ 1.17 provided that upon termination of the agreement in the event of strict compliance with § 1.19 of the agreement by Paull, the corporation agreed to teach any untaught lessons contracted by Paull.

§ 1.18 obligated Paull to pay into a trust account* each week 3-1/2 percent of his gross receipts until the account equaled 15 percent of the average annual gross receipts for the most recent 3 years; provided, if the licensee (Paull) owed any past obligations to the corporation, then the said 3-1/2 percent would be paid to the corporation to reduce the debt. This section further provided that Paull was not allowed to draw in excess of $50 per week from the business until said trust account was fully funded.

The contracts executed by the plaintiff were signed at the Traverse City studio on a form furnished by the Arthur Murray Printing Service. The form did not specify with whom the plaintiff contracted, but stated "Arthury Murray School of Dancing." The plaintiff testified that she thought at the time she signed the contract that she was contracting with a national organization.

The testimony also indicates that defendant Paull had studios in Lansing and Jackson as well as in Traverse City, and that all of Paull's business transactions were made through a Lansing bank. Due to Paull's financial problems at the time, all checks on the Lansing account had to be countersigned by the defendant, Doris Eaton Travis.

The testimony indicates that when it was first contemplated that a studio would be opened in Traverse City, Doris Eaton Travis went to Traverse City and made arrangements to lease property from one William Votruba; the lease was consummated between Votruba and Doris Eaton Travis, Inc., which was controlled by Doris Eaton Travis,

---

* This account was for the very purpose of the present lawsuit: to pay for unused lessons upon the licensee ceasing business.

individually.   Doris Eaton Travis, Inc., subleased
the premises to Paull in accord with the "sub-fran-
chise agreement," § 1.03.

The record also indicates that many of Paull's
royalty checks were actually made payable to Doris
Eaton Travis personally, but deposited in the cor-
poration account.  Evidently this was a continuation
of the practice established prior to incorporation.
During the year 1961, the corporation received
$17,892.99 in royalties and $3,088.27 on past indebt-
edness from the Paull studios.

During the period that Paull was in financial dif-
ficulty and also in the hospital due to illness, Mrs.
Travis went from Detroit to Traverse City and
talked to certain creditors of Paull, assuring them
that Paull would be back and take care of the obliga-
tions.  She also told Mrs. Van Pelt in Detroit that
the Traverse City studio would reopen.

The trial court placed great emphasis on the para-
graph of the agreement which obligated all studios
to honor lessons of any other studio under the
national franchise.  Mrs. Van Pelt did take lessons
in Houston, Texas, and Honolulu.

The trial judge also placed great emphasis upon
the fact that after Paull had ceased doing business
he assigned all of his accounts receivable to Doris
Eaton Travis, individually, and she accepted such
assignment.

As previously stated, the primary question to be
resolved in this case is whether the trial court was
correct in finding an agency relationship between
the defendants.  The law regarding this issue is best
summarized in 3 Am Jur 2d, Agency § 21, p 430:

"The question whether an agency has been created
is ordinarily a question of fact which may be estab-
lished the same as any other fact, either by direct
or by circumstantial evidence; and whether an

agency has in fact been created is to be determined
by the relations of the parties as they exist under
their agreements or acts, with the question being
ultimately one of intention. The question is to be
determined by the fact that one represents and is
acting for another, and not by the consideration that
it will be inconvenient or unjust if he is not held to
be the agent of such other; and if relations exist
which will constitute an agency, it will be an agency
whether the parties understood the exact nature of
the relation or not. Moreover, the manner in which
the parties designate the relationship is not con-
trolling, and if an act done by one person in behalf
of another is in its essential nature one of agency,
the one is the agent of such other notwithstanding
he is not so called."

See, also, *Saums* v. *Parfet* (1935), 270 Mich 165.

Generally speaking, the test of principal and agent
is the right to control. It is not the fact of actual
interference with the control but the right to inter-
fere that makes the difference between an independ-
ent contractor and a servant or agent. *Tuttle* v.
*Embury-Martin Lumber Co.* (1916), 192 Mich 385.

Appellants cite the cases of *Brown* v. *Standard
Oil Co.* (1944), 309 Mich 101, and *Bluemer* v. *Saginaw
Central Oil & Gas Service, Inc.* (1959), 356 Mich 399.
It is clear in those cases that the agreements did not
reserve to the party who allegedly was the principal,
the right to exercise control over the business or the
operations of the gasoline station lessee. The degree
of control retained in the *Brown* and *Bluemer Cases,
supra,* falls far short of the control exercised by
Arthur Murray Studios of Michigan, Inc., over Paull.

More closely akin to the factual situation in our
present case is *Lower* v. *Muskegon Heights Co-op-
erative Dairy* (1930), 251 Mich 450. In the *Lower
Case, supra,* an agency was found to exist where the
contract between the dairy company and one selling

its products, in which the latter is referred to as "selling agent," provided that the company dictated the price at which products should be sold, had control of matters of sanitation, caused the business to be publicly conducted in its name, expressly retained ownership of routes over which products were delivered and also required a bond securing it against embezzlement.

We do not reverse unless the evidence clearly preponderates in the opposite direction. *Shaw* v. *Wiegartz* (1965), 1 Mich App 271.

Judgment affirmed. Costs to appellees.

McGREGOR, P. J., and NEWBLATT, J., concurred.