KAL-AERO, INC v DEPARTMENT OF TREASURY

Docket No. 60507. Submitted May 4, 1982, at Grand Rapids.—Decided
February 8, 1983. Leave to appeal denied, 417 Mich 1093.

Kal-Aero, Inc., a licensed aircraft retailer and fixed-base operator
at the Kalamazoo Municipal Airport, sells and services aircraft,
provides aircraft for rent or charter, and offers flight instruc-
tion and pilot services. At the time it purchased aircraft for its
use in rental and charter operations, Kal-Aero elected not to
pay sales tax at the time of purchase but rather to pay use tax
on rental receipts derived from the rental of aircraft purchased.
Kal-Aero paid use tax on rental receipts attributable to aircraft
it owned, but excluded from rental receipts reported for use tax
purposes income attributable to pilot services, instructional
services, and the charter or rental of aircraft owned by other
fixed-base operators or owned by other entities. The Depart-
ment of Treasury, contending that any charges for pilot or
flight instruction services rendered by Kal-Aero in connection
with a taxable aircraft rental are part of the price of the
transaction and, therefore, subject to use taxation, assessed a
tax deficiency against Kal-Aero. Kal-Aero appealed to the State
Board of Tax Appeals, which held that Kal-Aero was liable for
use tax computed on those rental receipts excluded by Kal-
Aero. Kal-Aero paid the taxes assessed under protest and
instituted a suit against the Department of Treasury in the
Court of Claims, seeking a refund. The Court of Claims,
Thomas L. Brown, J., held that pilot services and instructional
services provided in conjunction with rental of the aircraft
were subject to use tax but that Kal-Aero's subleasing of
aircraft rented or chartered from others was not a taxable
transaction where sales or use tax had been paid by the third
party. The court ordered the Department of Treasury to refund

REFERENCES FOR POINTS IN HEADNOTES

[1] 71 Am Jur 2d, State and Local Taxation § 8.
    72 Am Jur 2d, State and Local Taxation § 707.
[2, 4] 68 Am Jur 2d, Sales and Use Tax §§ 190, 193, 219.
    Sale or use tax on motor vehicle purchased out of state. 45 ALR3d
    1270.
[3] 68 Am Jur 2d, Sales and Use Taxes § 171.

$31,890.29, plus interest, to Kal-Aero. Kal-Aero appeals, challenging the court's determination that Kal-Aero must pay use tax on charges for pilot and instructional services it provides in conjunction with its rental of aircraft to customers. The Department of Treasury cross-appeals, claiming that the court erred in holding that Kal-Aero need not pay use tax on those transactions in which it subleases to its customers aircraft it has leased from a third party where the third party has paid Michigan sales or use tax on the aircraft at the time of its purchase. *Held:*

1. Under the particular facts of this case, the distinct and identifiable service transactions, which may or may not occur contemporaneously with the taxable aircraft rental transaction, are clearly severable from the taxable rental transactions and not subject to the use tax.

2. The provision of the Use Tax Act in issue in this case must be interpreted as meaning that once either use or sales tax has been paid by the owner-lessor relating to tangible personal property, subsequent sublease transactions involving that property are not taxable under the Use Tax Act. Such transactions would be taxable, if at all, under the state sales tax. The parties stipulated that the aircraft in issue in the cross-appeal had been subject to Michigan use or sales tax when purchased by Kal-Aero's lessors and that the leases of the aircraft to Kal-Aero are true leases to which the sales tax is inapplicable. Therefore, the subleasing by Kal-Aero of such aircraft is not a taxable transaction.

Affirmed in part and reversed in part.

1. TAXATION — JUDICIAL CONSTRUCTION.

The language of tax laws may be made plain, and if it is dubious it is not resolved against the taxpayer.

2. TAXATION — USE TAX — SALES TAX.

The Use Tax Act is designed to impose an excise tax on the use, storage or consumption of tangible personal property brought into Michigan in interstate commerce, after it has come to rest in this state, and is intended to reach those purchases by Michigan consumers not reached by the General Sales Tax Act (MCL 205.51 *et seq.,* 205.91 *et seq.;* MSA 7.521 *et seq.,* 7.551 *et seq.).*

3. TAXATION — USE TAX — SALES TAX.

The General Sales Tax Act and the Use Tax Act are complementary; their relation is such as to require recognition in each of

the provisions and operation of the other (MCL 205.51 *et seq.*, 205.91 *et seq.*; MSA 7.521 *et seq.*, 7.551 *et seq.*).

4. TAXATION — USE TAX — SALES TAX — TANGIBLE PERSONAL PROPERTY.

Michigan's use tax is intended to reach the storage, use or consumption of tangible personal property brought into Michigan on which a Michigan sales or use tax has not been paid; thus, once either use or sales tax has been paid by an owner-lessor relating to tangible personal property, subsequent sublease transactions involving that property are not taxable under the Use Tax Act; such transactions would be taxable, if at all, under the state sales tax (MCL 205.51 *et seq.*, 205.91 *et seq.*; MSA 7.521 *et seq.*, 7.551 *et seq.*).

*Warner, Norcross & Judd* (by *Stephen R. Kretschman* and *Richard E. Cassard*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Richard R. Roesch* and *Curtis G. Beck*, Assistants Attorney General, for defendant.

Before: D. F. WALSH, P.J., and WAHLS and G. R. McDONALD,* JJ.

G. R. McDONALD, J. Plaintiff appeals by right the denial of its claim for refund of use taxes paid; defendant appeals by right the grant of a partial refund of use taxes paid. The factual background of this case is drawn from the stipulation of facts entered into by the parties and on which the case was tried in the Court of Claims.

Plaintiff does business at the Kalamazoo Municipal Airport as a licensed aircraft retailer and a fixed-base operator. In addition to selling and servicing aircraft, plaintiff provides aircraft for rent or charter and offers flight instruction and pilot services. At the time plaintiff purchased aircraft

---

* Circuit judge, sitting on the Court of Appeals by assignment.

for its use in rental and charter operations, it elected under Rule 82 of the specific sales and use tax rules, 1979 AC, R 205.132, not to pay sales tax at the time or purchase, but rather to pay use tax on rental receipts derived from the rental of the aircraft purchased.

In addition to aircraft owned by plaintiff, it was stipulated that plaintiff has used in its rental and charter operations:

"(a) Aircraft owned by other fixed base operators (to provide a specific charter when the taxpayer has either no pilot available, or no plane, *i.e.,* a 'sub-charter').

"(b) Aircraft leased from other entities. (These aircraft are leased exclusively by the taxpayer. The leases are 'true leases', that is, the leases are not forms of installment sales contracts. The leases contain no purchase option.)"

The parties further stipulated that sales or use tax had been paid on the leased aircraft and that "Plaintiff has no liability for Michigan sales or use tax with respect to (these) aircraft * * * unless the lease or charter of aircraft owned by others is an independently taxable transaction."

Some customers utilize the flight instruction or pilot services offered by plaintiff without renting its aircraft. Some customers rent aircraft from plaintiff without arranging for either flight instruction or for a pilot to be provided by plaintiff. Charges for instruction were separately itemized on invoices sent to plaintiff's customers. Instructional charges were calculated on an hourly rate and did not vary whether or not the customer rented the aircraft in which the instruction was received. Charges for pilot services were not separately itemized on invoices, but the charge was calculated using a separate hourly rate. The

charges for instructional services and for pilot services were stipulated to represent reasonable charges for those services.

On sub-charters from other fixed-base operators, the other operator billed plaintiff. Plaintiff in turn billed the customer, receiving as its compensation for arranging the charter the difference between the two bills.

Pursuant to its election under Rule 82, the plaintiff paid use tax on rental receipts attributable to aircraft it owned. However, plaintiff excluded from rental receipts reported for use tax purposes income attributable to pilot services, instructional services, and the charter or rental of aircraft owned by other fixed-base operators or owned by other entities.

The State Board of Tax Appeals held that plaintiff was liable for use tax computed on those rental receipts excluded by plaintiff. Plaintiff paid the taxes assessed under protest and instituted a suit for refund in the Court of Claims. The trial judge held that pilot services and instructional services provided in conjunction with rental of the aircraft were subject to use tax. The court found, however, that plaintiff's subleasing of aircraft rented or chartered from others was not a taxable transaction where sales or use tax had been paid by the third party and ordered defendant to refund to plaintiff $31,890.29, plus interest.

Plaintiff on appeal challenges the trial judge's determination that plaintiff must pay use tax on charges for pilot and instructional services it provides in conjunction with its rental of aircraft to customers. Rule 82, pursuant to which plaintiff elected to pay use rather than sales tax, provides, in pertinent part:

"A person engaged in the business of renting or

leasing tangible personal property to others shall pay the Michigan sales or use tax at the time he purchases tangible personal property, or he may report and pay use tax on the rental receipts from the rental thereof."

Use tax is defined in § 3 of the Use Tax Act, MCL 205.93; MSA 7.555(3), as "a specific tax for the privilege of using, storing or consuming tangible personal property in this state, which tax shall be equal to 4% of the price of such property * * *".

We agree with plaintiff that, under the particular facts present in this case, income attributable to instructional and pilot services rendered was not part of the "price" of the aircraft to which the use tax applies.

"Price" is defined in § 2 of the Use Tax Act, MCL 205.92(f); MSA 7.555(2)(f).[1]

"(f) 'Price' means the aggregate value in money of any thing, or things, paid or delivered, or promised to be paid or delivered by a consumer to a seller *in the consummation and complete performance of the transaction by which tangible person[al] property or services shall have been purchased or rented for* storage, use or other consumption in this state, without any deduction therefrom on account of the cost of the property sold; cost of materials used, labor or service cost, interest or discount paid, or any other expense whatsoever." (Emphasis added.)

Pilot and instructional services were not always part of the "complete performance of the transaction" by which plaintiff rented aircraft to its customers. These services were neither necessary nor incidental to complete performance of the taxable transaction, *i.e.*, the rental of the aircraft. Customers were free to and did rent aircraft without

[1] This provision has been subsequently amended by 1981 PA 166, § 1.

purchasing these services; services could be and were purchased by customers who did not rent aircraft from plaintiff. Charges for pilot services and instructional services were calculated using a separate hourly rate and were stipulated to be reasonable.

Each case must, of course, turn on its own facts. On the particular facts of this case, we conclude that the distinct and identifiable service transactions, which may or may not occur contemporaneously with the taxable aircraft rental transaction, are clearly severable from the latter and thus not subject to the use tax.

Defendant has cross-appealed, claiming the trial judge erred in holding that plaintiff need not pay use tax on those transactions in which it subleases to its customers aircraft it has leased from a third party where the third party has paid Michigan sales or use tax on the aircraft at the time of its purchase.

The Michigan Use Tax Act does not impose a use tax on every lease transaction. Following definition of "price", by which the amount of use tax due is to be calculated, MCL 205.92(f); MSA 7.555(2)(f) provides:

"No tax is to be computed or collected on rental receipts when the tangible personal property rented or leased has previously been subjected to a Michigan sales or use tax *when purchased by the lessor.*" (Emphasis added.)

"Purchase" is broadly defined as "acquired for a consideration" and includes a lease transaction. MCL 205.92(e); MSA 7.555(2)(e).

As the aircraft rented by plaintiff from third parties were subject to use or sales tax when purchased by plaintiff's lessors it is clear, and

defendant does not argue otherwise, that a use tax may not be imposed on receipts resulting from the rental transaction between plaintiff and the owner-lessor of the aircraft.

The statute is not clear on whether receipts from subleasing of such aircraft by plaintiff are subject to use tax. Defendant argues that a use tax is collectible on subsequent sublease transactions in which plaintiff, as a "lessor", has not been subjected to any previous payment of sales or use tax in relation to the aircraft it subleases, irrespective of the fact that the property has been subject to sales or use tax when purchased by plaintiff's "lessor".

The construction of the statute urged by defendant would be contrary to this Court's duty not to extend the scope of tax laws by implication of forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer. *In re Dodge Brothers,* 241 Mich 665, 669; 217 NW 777 (1928). Further, the defendant's construction would be wholly inconsistent and contrary to the Legislature's purpose and intent in enacting the Use Tax Act.

The Use Tax Act is designed to impose an excise tax on the use, storage or consumption of tangible personal property brought into Michigan in interstate commerce, after it has come to rest in this state. *Western Electric Co v Dep't of Revenue,* 312 Mich 582, 596; 20 NW2d 734 (1945). "Its intent is to reach those purchases by Michigan consumers not reached by the sales tax act [MCL 205.51 *et seq.;* MSA 7.521 *et seq.].*" *National Bank of Detroit v Dep't of Revenue,* 334 Mich 132, 141; 54 NW2d 278 (1952). "The sales tax act and the Use Tax Act are complementary. Their relation is such as to require recognition in each of the provisions and

operation of the other." *Don McCullagh, Inc v Dep't of Revenue,* 354 Mich 413, 425; 93 NW2d 252 (1958), *app dis* 359 US 343; 79 S Ct 897; 3 L Ed 2d 927 (1959).

Thus, the use tax is intended to reach the storage, use or consumption of tangible personal property brought into Michigan on which a Michigan sales or use tax has not been paid. Consistent with this purpose, the provision of the Use Tax Act in issue here must be interpreted as meaning that once either use or sales tax has been paid by the owner-lessor relating to tangible personal property, subsequent sublease transactions involving that property are not taxable under the Use Tax Act.

Such transactions would be taxable, if at all, under the state sales tax. The parties having stipulated that the aircraft had been subject to Michigan use or sales tax when purchased by plaintiff's lessors and that the leases of the aircraft are "true leases", to which the sales tax is inapplicable, compare MCL 205.51(1)(d); MSA 7.521(1)(d), the subleasing by plaintiff of such aircraft is not a taxable transaction.[2]

---

[2] The untenability of defendant's position is also illustrated by the following example. Assume that A sells an aircraft to B, who pays a sales tax on the purchase price. B then leases the aircraft to C. C subleases it to D, who in turn subleases it to E. Thus, four separate transactions have taken place:

(1) A sells to B;

(2) B leases to C;

(3) C subleases to D;

(4) D subleases to E.

Because a sales tax has been paid upon the purchase by B, it is clear under the "price" definition that no tax is payable on the second transaction. Defendant argues that even though the transfer of possession from B to C is not taxable, the transfer of possession from C to D triggers a second use tax liability upon the subleased aircraft. However, if defendant's argument were taken one step further, the transfer from D to E would not be taxable, D's immediate sublessor having paid use tax. Defendant's construction of the statute thus results in an irrational pattern of alternating taxable and nontaxable transactions involving the same property.

The judgment of the Court of Claims is affirmed in part and reversed in part in accordance with this opinion.