NATURAL AGGREGATES CORPORATION v DEPARTMENT OF
TREASURY

Docket No. 67602. Submitted January 4, 1984, at Lansing.—Decided
April 2, 1984. Leave to appeal applied for.

Petitioner, Natural Aggregates Corporation, sells sand and
gravel. It also delivers its products to customers who request
delivery service, billing those customers separately for the
delivery charges. The Department of Treasury assessed a sales
tax on delivery charges for the period from October, 1974,
through April, 1978. Petitioner sought a review before the
State Board of Tax Appeals, alleging that the deliveries consti-
tuted nontaxable service transactions. The board upheld the
assessment, and petitioner appealed by leave granted. *Held:*

1. The sales tax is levied upon sales at retail, defined as
transactions where ownership of tangible personal property is
transferred.

2. The General Sales Tax Act evinces a recognition that a
retail seller may simultaneously engage in a service business
the proceeds of which are not subject to a sales tax.

3. Petitioner's delivery service is such a service business. The
delivery service is separately contracted for and separately
billed, and the trucking charges are not utilized in calculating
the gross price of the products. The delivery transactions are
not subject to the sales tax.

Reversed and remanded to the Tax Tribunal.

1. STATUTES — JUDICIAL CONSTRUCTION.

The cardinal rule of statutory construction is to ascertain and
give effect to the intent of the Legislature.

2. TAXATION — SALES TAX — SALE AT RETAIL.

A "sale at retail", taxable under the General Sales Tax Act, is a
transaction where ownership of tangible personal property is

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 145, 146.
[2] 68 Am Jur 2d, Sales and Use Taxes §§ 68, 129.
[3] 68 Am Jur 2d, Sales and Use Taxes §§ 76, 77.
[4] 71 Am Jur 2d, State and Local Taxation § 8.

transferred; the sales tax is measured by gross proceeds of sales at retail (MCL 205.51[1], subds [b] and [g]; MSA 7.521[1], subds [b] and [g]).

3. Taxation — Sales Tax — Nontaxable Transactions.

A seller at retail may simultaneously engage in a service business, the proceeds of which are not subject to a sales tax, where the nontaxable service is a separate transaction from the sale of goods and the taxpayer maintains separate books on his taxable and nontaxable transactions (MCL 205.52; MSA 7.522).

4. Taxation — Statutes — Judicial Construction.

Revenue statutes must be construed against the taxing authority in doubtful cases.

*Pevos & Pevos* (by *Daniel N. Pevos*), for petitioner.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Richard R. Roesch* and *Thomas J. Kenny*, Assistants Attorney General, for respondent.

Before: Bronson, P.J., and M. J. Kelly and R. S. Hoffius,* JJ.

Bronson, P.J. Petitioner appeals by leave granted from an order of the State Board of Tax Appeals[1] which upheld a sales tax assessment by the Department of Treasury. The parties have entered into a stipulation of facts. Natural Aggregates mines, processes, and sells sand and gravel. Petitioner also owns a fleet of trucks in which petitioner delivers its sand and gravel products to customers who request delivery service. Customers are separately invoiced for the trucking charges. Prior to the assessment at issue, petitioner did not

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The authority of the State Board of Tax Appeals was abrogated by 1980 PA 162, § 4, as amended by 1981 PA 138, § 1.

pay sales tax on the separately invoiced trucking charges.

In December, 1979, petitioner was assessed a sales tax of $7,040.03, plus $2,081.12 interest, on trucking charges for the period from October 1, 1974, through April 30, 1978. Petitioner requested a redetermination of this assessment, arguing that the trucking constituted nontaxable service transactions. The State Board of Tax Appeals upheld the assessment.

The sole issue presented in this case is whether the trucking charges collected by petitioner from certain customers are taxable under the Michigan General Sales Tax Act, MCL 205.51 *et seq.;* MSA 7.521 *et seq.;* MCL 205.52; MSA 7.522 provides:

"There is hereby levied upon and there shall be collected from all persons engaged in the business of making sales at retail, as hereinbefore defined, an annual tax for the privilege of engaging in such business equal to 4% of the gross proceeds thereof, plus the penalty and interest when applicable as hereinafter provided, less deductions allowed in sections 4 and 4a.

"Any person engaged in the business of making sales at retail who is at the same time engaged in some other kind of business, occupation, or profession not taxable under this act, shall keep books to show separately the transactions used in determining the tax herein levied. In the event of such person failing to keep such separate books, there shall be levied upon him the tax hereinbefore mentioned equal to 4% of the entire gross proceeds of both or all of his businesses."

Both parties argue that the statutory provision supports their respective positions. While the Department of Treasury urges that the trucking charges constitute "gross proceeds" of a sale at retail, petitioner argues that the trucking provided

to customers constitutes "some other kind of business" not properly taxable under the act.

The question whether transportation charges of this type are taxable under the General Sales Tax Act, although previously decided by the Tax Tribunal and some lower courts,[2] has not heretofore been decided by this Court. We are thus confronted with a question of statutory construction. The cardinal rule of construction is to ascertain and give effect to the legislative intent. *Howard Pore, Inc v State Comm'r of Revenue*, 322 Mich 49, 58; 33 NW2d 657 (1948).

The Michigan sales tax is a privilege tax enacted for the privilege of engaging in the business of selling tangible personal property. *National Bank of Detroit v Dep't of Revenue*, 334 Mich 132, 140; 54 NW2d 278 (1952). Only "sales at retail" are taxable under the act. A "sale at retail" is defined as:

"[A] transaction by which is transferred for consideration the ownership of tangible personal property, when the transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use * * *." MCL 205.51(1)(b); MSA 7.521(1)(b).

The sales tax is *measured* by the gross proceeds of sales at retail. *National Bank of Detroit v Dep't of Revenue, supra.*

" 'Gross proceeds' means the amount received in money, credits, subsidies, property, or other money's worth in consideration of a sale at retail within this

---

[2] See *Charles Van Every v Dep't of Treasury*, State Board of Tax Appeals, Docket Nos. 719 and 720 (September 23, 1971); *Pine Lumber Co v Dep't of Treasury*, Michigan Court of Claims No. 5325 (October 26, 1978); *Wallace & Morley v Dep't of Revenue*, Huron County Circuit Court No. 4965 (December 17, 1958).

state, without deduction on account of the cost of the property sold, the cost of material used, the cost of labor or service purchased, an amount paid for interest or a discount, a tax paid on beer or liquor at time of purchase or other expenses, nor shall a deduction be allowed for losses." MCL 205.51(1)(g); MSA 7.521(1)(g).

The statute provides that a "sale at retail" is a transaction where tangible personal property ownership is transferred. Respondent argues that "some other kind of business" in MCL 205.52; MSA 7.522 refers to a second business totally unrelated to the transfer of ownership of tangible personal property. We disagree. In *Sims v Firestone Tire & Rubber Co,* 397 Mich 469; 245 NW2d 13 (1976), the Michigan Supreme Court addressed the question of whether a retailer engaged in both sales and services may pass along to its customers the amount of a penalty imposed for the retailer's failure to maintain separate records of taxable sales and nontaxable services. Although not at issue, the Supreme Court assumed that wheel rotation and wheel balancing were nontaxable services provided by Firestone. Obviously then, some relationship between the service and transfer of ownership will not *ipso facto* render the service taxable.

In examining the relationship between the delivery service and the transfer of ownership, the lower courts have looked to the time title to the property passes to the purchaser. Thus in *Pine Lumber Co v Dep't of Treasury, supra,* fn 2, the court found that the particular circumstances indicated that the parties did not consider title to pass until delivery.

In the instant case, customers who purchase sand and gravel pay the same price whether they use their own vehicles to carry the product away

from petitioner's premises or utilize petitioner's trucking services to have the product delivered for them. Those who opt for petitioner's delivery service negotiate and contract separately for the service and pay a separate price. Secondly, the trucking charges are not a cost figured in calculating the gross price of the product. Moreover, the delivery charge can hardly be characterized as incidental to the purchase price where the price of gravel was $.30 per ton and the price of trucking services was between $1.30 and $1.55 per ton. These circumstances strongly suggest that delivery is a separate conceptual and temporal transaction from the sale.

We are not unmindful that certain jurisdictions have decided that delivery charges are subject to sales tax.[3] However, those decisions rest on construction of the particular statutory scheme at issue. The Michigan General Sales Tax Act evinces a recognition that a retail seller may simultaneously engage in a service business the proceeds of which are not subject to a sales tax. We believe the act is reasonably construed to classify petitioner's trucking service in the latter category.[4] "[I]n doubtful cases, revenue statutes must be construed

---

[3] *East Brewton Materials, Inc v State Dep't of Revenue,* 45 Ala App 584; 233 So 2d 751 (1970); *Meyer v State Board of Equalization,* 42 Cal 2d 376; 267 P2d 257 (1954); *Rich's, Inc v Blackmon,* 133 Ga App 665; 211 SE2d 916 (1975); *Harold W Fuchs Agency, Inc v Wisconsin Dep't of Revenue,* 91 Wis 2d 283; 282 NW2d 625 (Wis App, 1979). Contra, *State v Natco Corp,* 265 Ala 184; 90 So 2d 385 (1956); *Clarion Ready Mixed Concrete Co v Iowa State Tax Comm,* 252 Iowa 500; 107 NW2d 553 (1961); *Kurtz Concrete, Inc v Spradling,* 560 SW2d 858 (Mo, 1978).

[4] *Cf. Kal-Aero, Inc v Dep't of Treasury,* 123 Mich App 46; 333 NW2d 171 (1983), *lv den* 417 Mich 1093 (1983), where this Court held that pilot and instructional services provided by the taxpayer in connection with the rental of aircraft were distinct and identifiable service transactions, severable from the taxable rental transaction, and not subject to the Michigan use tax, MCL 205.91 *et seq.;* MSA 7.555(1) *et seq.*

against the taxing authority." *Ecorse Screw Machine Products Co v Corporation & Securities Comm,* 378 Mich 415, 418; 145 NW2d 46 (1966). We, therefore, reverse the order of the State Board of Tax Appeals and remand this case to the Tax Tribunal for determination of a refund, MCL 205.773; MSA 7.650(73).

Reversed and remanded.