RCA SERVICE COMPANY DIVISION, RCA CORPORATION v
DEPARTMENT OF TREASURY

Docket No. 73520. Submitted March 12, 1984, at Lansing.—Decided
June 28, 1984.

RCA Corporation in 1971 leased to Consumers Power Company
and Michigan Gas Storage for a period of ten years certain
radio communication equipment. As part of the leasing agree-
ment the lessees assumed sole responsibility for the installa-
tion, service and maintenance of the leased equipment, with
the option to satisfy that responsibility through their own
employees, by contracting with RCA Service Company Division,
RCA Corporation, an autonomous division of RCA Corporation,
or by contracting with a qualified third party. Both lessees
opted to have the servicing done by RCA Service. When the
Michigan Department of Treasury served notice that it in-
tended to levy a use tax based on the value of the service
contract, RCA Service petitioned for a hearing on the imposi-
tion of that levy. The hearing officer held that the service
contract transaction was subject to taxation under the Use Tax
Act. The State Board of Tax Review affirmed the determination
of the hearing officer, holding that the service contract transac-
tion, like the leasing agreement itself, was subject to taxation
under the Use Tax Act. RCA Service sought review in the
Court of Claims. The Court of Claims, James T. Kallman, J.,
disagreed with the decision of the State Board of Tax Review
and held that the value of the service contract was not subject
to taxation under the Use Tax Act. The Department of Trea-
sury appealed. *Held:*

Since the service contract was separate and distinct from the
lease agreement and, by the clear language of the lease agree-
ment, was not necessary or incidental to complete performance
of the lease agreement, the service contract was not part of the
taxable lease agreement and was not taxable under the Use
Tax Act.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTE
68 Am Jur 2d, Sales and Use Taxes § 211.
Sales and use taxes on leased tangible personal property. 2 ALR4th
859.

TAXATION — USE TAX — SERVICE CONTRACTS.

The amounts paid to a company to service equipment which has been leased by that company is not subject to taxation under the Use Tax Act where the service contract is separate and distinct, both in fact and form, from the lease agreement and the lessee is permitted under the lease agreement to choose someone other than the lessor to do the servicing of the equipment, since under such circumstances the servicing contract is not necessary or incidental to complete performance of the taxable transaction (MCL 205.91 *et seq.;* MSA 7.551 *et seq.*).

*Marcoux, Allen, Beaman & Cheney, P.C.* (by *William O. Allen* and *William M. Abbott),* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Curtis G. Beck,* Assistants Attorney General, for respondent.

Before: SHEPHERD, P.J., and ALLEN and A. E. KEYES,* JJ.

PER CURIAM. The Department of Treasury appeals as of right from an order of the Court of Claims, reversing a decision of the State Board of Tax Appeals and ordering a use tax refund to petitioner. The decision of the Court of Claims judge was based on the following facts, stipulated to by the parties:

"1. RCA Service Company (Service) is an autonomous division of RCA Corporation, a Delaware corporation (RCA).

\*    \*    \*

"4. Effective January 1, 1971, RCA entered into written agreements with Consumers [Consumers Power Co.] and Storage [Michigan Gas Storage] for the leasing by

* Circuit judge, sitting on the Court of Appeals by assignment.

RCA to Consumers and Storage of radio communication equipment, * * *.

"5. The initial term of the aforesaid lease agreements was ten years.

"6. Article XII of the lease agreements provided that Consumers and Storage were solely responsible for the installation, service and maintenance of the equipment leased pursuant to the agreement and could satisfy said responsibility through their own employees, by contract with Service or by contract with a qualified third party.

"7. Consumers and Storage investigated each of the aforesaid service alternatives prior to executing one year service contracts with Service, a division of RCA.

"8. One year contracts were executed in order to enable Consumers and Storage to assess the quality of Service performance prior to making a long term commitment to one of the maintenance and service alternatives provided in Article XII of the aforesaid lease agreements. * * *.

"9. During the term of the one year service contracts, labor unrest at Consumers and Storage resulted in lengthy work stoppages. The aforesaid work stoppages prevented Consumers and Storage from making a valid assessment of Service performance under the service and maintenance contracts.

"10. The initial one year service contracts were extended for an additional term of one year ending January 1, 1973, in order that Consumers and Storage could make the assessment of Service performance they had been prevented from making during the initial one year term of the service contracts.

"11. Consumers and Storage undertook a comprehensive performance analysis of Service maintenance and service during the one year extensions.

"12. Subsequent to an evaluation of the performance analysis, Consumers and Storage decided to enter into three year service contracts with Service in order to fulfill their obligations under Article XII of the lease agreements. * * *.

"13. The execution of the service contracts by Consumers and Storage with Service followed two years of performance analysis and a thorough exploration of the

feasibility of utilizing the other alternatives provided in Article XII of the lease agreements.

"14. The service contracts executed by Consumers and Storage with Service are separate from the lease agreements with RCA and embodied in different documents.

"15. The ten year term of the lease agreements expires in 1981.

"16. The service contracts provided an initial term of three years and from year to year thereafter until 1981 unless sooner terminated by either party.

"17. In a letter to Commerce Clearing House, Inc., dated March 2, 1966, Deputy Commissioner Donovan J. Rau stated that the department's position was that the total amount charged for rentals is subject to use tax unless a separate optional service contract is entered into between lessor and lessee and the specific service charge is separately billed to the lessee. * * *.

"18. In a subsequent letter to Commerce Clearing House, Inc., dated May 7, 1966, Deputy Commissioner Donovan J. Rau stated that the department's position as reflected in the letter dated March 2, 1966, was rescinded, and that the department was currently taking the position that a lessor of tangible property is not entitled to deduct charges for maintenance or services even though billed separately to the lessee. * * *."

The parties also stipulated to submit the transcript of proceedings before the State Board of Tax Appeals and exhibits which had been submitted to the board. The parties agreed that the Court of Claims judge should review the claim for refund *de novo,* pursuant to now repealed MCL 205.9; MSA 7.657(9).

The State Board of Tax Appeals concluded that the use tax applied to both the cost for leasing equipment and to the payments to RCA's service division for services and maintenance. The trial judge disagreed, holding that services were not taxable under the Use Tax Act.

We believe that the decision of the Court of Claims judge should be affirmed, based on this Court's opinion in *Kal-Aero, Inc v Dep't of Treasury,* 123 Mich App 46; 333 NW2d 171 (1983). In *Kal-Aero,* the taxpayer provided aircraft for rent or charter and also offered flight instruction and pilot services. The parties agreed that plaintiff was liable for use tax on its leasing and chartering charges. At issue was whether charges for flight instructions and pilot services were also subject to use tax when purchased by the same customer who rented or chartered aircraft. Some customers of Kal-Aero used flight instruction or pilot services without renting aircraft from Kal-Aero. Some customers rented aircraft without utilizing flight instruction or pilot services. Charges for services were separately itemized on invoices to customers. The charges for services were the same whether or not the customer rented aircraft from Kal-Aero. This Court concluded that distinct and identifiable service transactions, which may or may not occur contemporaneously with taxable rental transactions, are clearly severable from the latter and are not subject to the use tax. *Kal-Aero, supra,* pp 51-52.

In this case, the testimony before the Board of Tax Appeals clearly established that Consumers and Storage were not obligated to contract for maintenance services with RCA's service division. The parties stipulated that, in fact, these customers seriously investigated the possibility of obtaining service for their leased equipment from independent sources. The fact that no other organization actually serviced the leased equipment at issue is not of any consequence, since the taxpayer had clearly made the rental and service transactions separable and distinct, both in form and in

fact. We conclude that, in the present case, the maintenance services were not "necessary or incidental to complete performance of the taxable transaction".

We specifically reject the analysis made by the State Board of Tax Appeals. The board concluded that the only question at issue in this case was whether or not RCA could reduce its tax liability by making changes in its corporate structure. The internal structure of a business entity does not determine whether or not a use tax is appropriate on services sold in connection with a lease transaction. If the services are, in fact, incidental and necessary to complete performance of the taxable transaction, they are subject to tax. The determining factor here was that the lessees were under no compulsion to contract for maintenance services with the lessor. Charges for these services were, therefore, severable from charges under the leases.

Affirmed.