# STATE OF MICHIGAN

# COURT OF APPEALS

MORLEY COMPANIES, INC.,

       Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

       Defendant-Appellee.

UNPUBLISHED
March 24, 2015

No. 318624
Court of Claims
LC No. 12-000100-MT

Before: JANSEN, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals as of right from an order of the Court of Claims denying its motion for summary disposition and granting defendant's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

Plaintiff is a Michigan business operating as an event management service company that, among other things, designs, organizes, executes, and manages special events and meetings for a Fortune 500 clientele. After working closely with a client to help the client choose the various components of an event and drawing up an agreement that reflects those choices and identifies plaintiff's obligations, plaintiff contracts for hotel accommodations, transportation, food and beverages, activities, and entertainment. If the client so directs, plaintiff also procures tangible personal property for use as gifts and giveaways to event attendees. In conjunction with purchasing such items, plaintiff claimed a sales tax exemption because, it reasoned, the purchase was for resale to its clients. Record evidence shows that vendors often shipped the items to plaintiff at its Saginaw headquarters. Plaintiff stated that it retained the merchandise to inspect it for quality and quantity, consolidated it with other items, and then shipped everything to the event venue. Third-party vendors billed plaintiff for the items, and plaintiff invoiced its clients the cost of the items, generally without markup.

Defendant audited plaintiff for the tax periods from March 1, 2006, through February 28, 2010. The audit revealed that plaintiff had not paid sales tax or use tax on the goods it purchased from third-party vendors and had not collected use tax for the goods from its clients. Because the value of the total services plaintiff provided was never less than 80 percent of the total charges, defendant deemed plaintiff a service provider rather than a seller of goods, and assessed a use tax against plaintiff in the amount of $213,958, plus statutory interest, with respect to these goods. Plaintiff paid the assessment under protest and eventually filed an action in the Court of

Claims requesting a refund, alleging an exemption from use tax because it did not store, use, or consume the tangible personal property, but purchased it as an agent of its clients or for resale to its clients.

Plaintiff and defendant filed cross-motions for summary disposition under MCR 2.116(C)(10). The Court of Claims denied plaintiff's motion and granted defendant's motion, finding that plaintiff had not presented evidence sufficient to raise a genuine issue of material fact with respect to its claim to operate as its clients' agent or as a reseller of merchandise to its clients. The court also found that plaintiff's transactions with its clients involved the sale of services and the sale of goods. Applying the incidental-to-services test of *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13; 678 NW2d 619 (2004), the court concluded that plaintiff used the tangible personal property in partial fulfillment of its service obligation and, therefore, was subject to use tax. We review de novo plaintiff's challenge to the court's ruling. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2002).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the documentary evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the trial court may grant the motion. *Id*. "[T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence," and then the burden shifts "to the opposing party to establish that a genuine issue of disputed fact exists." *Id*. (citation omitted). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. at 363.

Under the Use Tax Act (UTA), MCL 205.91 *et seq*., every person[1] in Michigan is subject to a use tax "for the privilege of using, storing, or consuming tangible personal property in this state . . . ." MCL 205.93(1). The UTA defines "[s]torage" as "a keeping or retention of property in this state for any purpose after the property loses its interstate character." MCL 205.92(c).[2] It defines "[u]se" as "the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given." MCL 205.92(b).

A person who purchases property for resale is exempt from paying use tax as long as the purchaser does in fact resell the property. MCL 205.94(1)(c)(*i*) and (2). Plaintiff argues that

---

[1] "Person" includes a firm. MCL 205.92(a).

[2] Merchandise ordinarily loses its interstate character when it reaches the point where the parties originally intended the movement of the merchandise to end. 15A Am Jur 2d, Commerce, § 65, p 518.

although the Court of Claims recognized that sales of tangible personal property were itemized separately from the sale of services, it erred when it failed to treat these sales as separate taxable transactions. Plaintiff argues that the court should have found that each separately stated sale of program gifts and giveaways was a separate transaction constituting a taxable sale at retail to plaintiff's customers, and thus exempt. "[T]he burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt." *Evanston YMCA Camp v State Tax Comm'n*, 369 Mich 1, 8; 118 NW2d 818 (1962) (citations and quotation marks omitted).

In support of its position, plaintiff cites *RCA Serv Co Div, RCA Corp v Dep't of Treasury*, 135 Mich App 807; 355 NW2d 679 (1984), *Natural Aggregates Corp v Dep't of Treasury*, 133 Mich App 441; 350 NW2d 272 (1984), and *Kal-Aero v Dep't of Treasury*, 123 Mich App 46; 333 NW2d 171 (1983). Plaintiff's reliance on these three cases is misplaced. What distinguishes the facts of the case at bar from *RCA*, *Natural Aggregates*, and *Kal-Aero* is that the plaintiff in each of those cases sold, rented, or leased goods at retail, while also selling services that were entirely distinct from the goods. *RCA Serv*, 135 Mich App at 808-809, 811-812; *Natural Aggregates*, 133 Mich App at 442, 446; *Kal-Aero*, 123 Mich App at 48-49, 51-52. Because each plaintiff's charges for the services sold were separately identifiable from charges for the goods sold, the income earned from the services was distinct and not subject to taxation. *RCA*, 135 Mich App at 812; *Natural Aggregates,* 133 Mich App at 442, 446; *Kal-Aero*, 123 Mich App at 51-52. In the case at bar, plaintiff does not sell, and clients cannot purchase from it, the tangible personal property at issue apart from plaintiff's event management services. Plaintiff's clients can opt out of giving room gifts to its attendees, but they cannot purchase, rent, or lease gifts and giveaways from plaintiff apart from engaging plaintiff's services.

Next, plaintiff argues that it serves as a purchasing agent for its clients and thus is not liable for use tax. Defendant argues that plaintiff did not hold itself out to third-party vendors as a purchasing agent for its clients and that there is no factual basis for plaintiff's contention that its clients were disclosed principals. An agency relationship is "a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by words or actions." *Breighner v Mich High Sch Athletic Ass'n*, 255 Mich App 567, 582-583; 662 NW2d 413 (2003) (citation and quotation marks omitted). Whether an agency relationship has been created is ordinarily a question of fact that a party may resolve by direct or by circumstantial evidence. *Van Pelt v Paull*, 6 Mich App 618, 623; 150 NW2d 185 (1967). "[W]hether an agency has in fact been created is to be determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention." *Id*. at 623-624 (citation and quotation marks omitted). "The manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called." *Id*. at 624 (citation and quotation marks omitted).

Plaintiff has not presented evidence sufficient to create a genuine issue of material fact that an agency relationship existed between it and any of its clients. Plaintiff's blanket purchase order clearly states that "nothing in the contract makes either party the agent or legal representative of the other for any purpose whatsoever." Plaintiff argued that, the language of

the purchase order notwithstanding, its Scope of Work agreement and its course of dealing created an agency relationship between plaintiff and its clients. The evidence is clear, however, that with regard to the purchase of tangible personal property to fulfill its contractual obligations, plaintiff did not hold itself out to third-party vendors as an agent of its clients. On the contrary, defendant presented indisputable evidence in the form of the testimony of plaintiff's controller that plaintiff held itself out to third-party vendors as a buyer purchasing tangible personal property for resale. Plaintiff procured the tangible personal property requested by the client for itself for use in partial fulfillment of its obligation to design, arrange, execute, and manage a particular event for the client. Although plaintiff's clients selected the elements of the special events and meetings, including choosing the tangible personal property to be used as gifts and giveaways, the record contains no evidence that clients controlled plaintiff's conduct in the latter's fulfillment of the clients' wishes. "Fundamental to the existence of an agency relationship is the right of the principal to control the conduct of the agent." *Briggs Tax Serv, LLC v Detroit Pub Schs*, 485 Mich 69, 80; 780 NW2d 753 (2010).[3]

Plaintiff also argues that the trial court erred when it applied the incidental-to-services test. Plaintiff asserts that the trial court confused services that are separate and apart from the property transferred with services that are embodied in the property. Defendant counters that the incidental-to-services test is applicable because plaintiff provides a single transaction, namely a group event or program, to its clients.

In *Catalina Mktg Sales Corp*, 470 Mich at 19, the Michigan Supreme Court explained that, "[a]s a general rule, sales tax applies only to sales of tangible personal property, not sales of services. When a single transaction . . . involves both the provision of services and the transfer of tangible personal property, it must be categorized as either a service or a tangible property transaction." The Court provided the following guidelines to use in determining whether the transfer of tangible personal property was incidental to the rendering of professional services:

> [A] court should examine what the buyer sought as the object of the transaction, what the seller or service provider is in the business of doing, whether the goods were provided as a retail enterprise with a profit-making motive, whether the tangible goods were available for sale without the service, the extent to which intangible services have contributed to the value of the physical item that is transferred, and any other factors relevant to the particular transaction. [*Id.* at 26.]

Plaintiff argues that *Catalina* is distinguishable. Plaintiff maintains that because *Catalina* involved "one monthly price for the marketing services and coupon delivery transaction," the coupon could not be separated from the marketing service, so the one mixed transaction had to

---

[3] We disagree with plaintiff's bare assertion that General Motors' possession of a "direct pay permit," see MCL 205.98, somehow overcomes the fact that no agency relationship existed and the other circumstances of this case. We note that plaintiff's argument with regard to this issue is self-contradictory in that it refers to the existence of a "direct pay permit" but then relies on provisions—MCL 205.71(2) and MCL 205.103(2)—that are applicable to instances *not* involving a "direct pay permit."

be categorized as either a sale of tangible personal property or a sale of services. By contrast, plaintiff argues, its customers can purchase all of the other event elements (accommodations, transportation, food) but elect not to purchase the gifts and giveaways.

While it is true that plaintiff's clients could elect not to provide gifts or giveaways to their event attendees, a client's choice of gifts and giveaways occurred in the context of plaintiff's design, arrangement, execution, and management of the event. Again, the client could not purchase, and plaintiff did not sell, the merchandise apart from plaintiff's event management services. Contrary to plaintiff's claim that it provides "hundreds of separately itemized transactions" to its clients, a client's Scope of Work agreement actually represents a single transaction—the design, arrangement, execution, and management of a special event. Thus, where plaintiff's event management services are comprised of the sale of both services and goods, they are mixed transactions subject to the incidental-to-services test. We find no basis upon which to reverse the trial court's ruling.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Jane M. Beckering